**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

**CIVIL NO. 1:06CV2**

| | |
|---|---|
| **THEODORE R. ANDERSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **Vs.** | ) |
| | ) |
| **JEFFREY R. DOBSON; GERALD** | ) |
| **W. SODERQUIST; ROBERT W.** | ) |
| **MIDDLETON; and ARTHUR D.** | ) |
| **ACKERMAN,** | ) |
| | ) |
| **Defendants and Third-Party** | ) |
| **Plaintiffs,** | ) |
| | ) |
| **Vs.** | ) |
| | ) |
| **HALEAKALA RESEARCH AND** | ) |
| **DEVELOPMENT, INC.,** | ) |
| | ) |
| **Third-Party Defendant.** | ) |

## MEMORANDUM AND ORDER

**THIS MATTER** is before the Court on (1) Plaintiff's motion for

preliminary injunction, (2) defendants'/third-party plaintiffs' cross-motion for

preliminary injunction, (3) Plaintiff's Motion to dismiss for failure to state a

claim upon which relief can be granted, and (4) Third-Party Defendant's

motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

## I. FACTUAL BACKGROUND[1]

The Plaintiff is a Massachusetts resident, a scientist, engineer and inventor. **Complaint, ¶¶ 1, 7.** Relevant to the present case is Plaintiff's work in the field of plasma antenna technology for which he holds multiple patents. ***Id.*, ¶ 7.** Defendants/Third-Party Plaintiffs Dobson, Soderquist, Middleton, and Ackerman (collectively "Defendants") are residents of Tennessee (Dobson), Connecticut (Middleton) and North Carolina (Soderquist and Ackerman). ***Id.*, ¶¶ 2-5; Defendants' Answer to Complaint, Counterclaim, Third-Party Complaint and Motion for Preliminary Injunction ("Defendants' Answer"), filed February 21, 2006, ¶¶ 2-5.** Dobson and Soderquist are experienced in the management of high technology companies, while Middleton and Ackerman are experienced in investment banking. **Complaint, ¶ 8; Defendants' Answer, ¶ 8.** Third-Party Defendant Haleakala Research and

---

[1] The majority of facts in this case are not in dispute. Where a dispute does exist, the Court will note the position of each side.

Development, Incorporated ("Haleakala"), is a Massachusetts corporation of which Plaintiff is currently the sole director and officer.  **Defendants' Answer, ¶ 45; Exhibit 1,** *attached to* **Defendants/Third Party Plaintiffs' Response and Opposition to Anderson and Haleakala R & D's Motions to Dismiss ("Defendants' Response to Motions to Dismiss"), filed April 18, 2006.**

The relationship between these parties began as a result of Plaintiff's desire for "the assistance of individuals with expertise in investment banking, marketing, and other business skills" so as to commercialize the technology covered by his patents.  **Complaint, ¶ 8; Defendants' Answer, ¶ 8.**  To that end, Plaintiff was introduced to the Defendants; in or about June 2004, the parties formed SmartBand Technologies, Incorporated ("SmartBand"), a Delaware corporation which is at the heart of this case.  **Complaint, ¶ 9; Defendants' Answer, ¶ 9.**

Of the 100,000 shares of SmartBand stock authorized, 10,000 shares were issued when SmartBand was formed.  **Exhibit 2, Shareholders' Agreement,** *attached to* **Declaration of Theodore R. Anderson, Exhibit A,** *attached to* **Plaintiff's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction**

**("Plaintiff's Memorandum in Support of Preliminary Injunction"), filed January 9, 2006.** In the original stock dispersion, Plaintiff received 9,000 shares, Russell Yelton[2] received 500 shares, and Defendants received 500 shares.[3] **Complaint, ¶ 11; Defendants' Answer, ¶ 11.** In addition, two stock pools were established, one containing 1,000 shares and the other 500 shares. *Id.* In addition to being shareholders, the Plaintiff and Defendants formed the SmartBand Board of Directors, and Defendant Dobson (President and CEO), Plaintiff Anderson (Vice President) and Defendant Soderquist (Secretary) were SmartBand officers. *Id.*

The SmartBand shareholders entered into a Shareholders' Agreement at or about the time SmartBand was formed. The Shareholders' Agreement provides for restrictions on the transfer of stock,

---

[2] Russell Yelton worked with the Plaintiff to form SmartBand Antennas, not to be confused with SmartBand Technologies. Once SmartBand Technologies, Inc., was formed, Yelton became one of its shareholders and officers. **Exhibit B, Declaration of Russell Yelton, *attached to* Plaintiff's Reply in Support of Motion for Preliminary Injunction and Opposition to Defendants' Motion for Preliminary Injunction, filed April 3, 2006, ¶¶ 2-3.**

[3] The 500 shares that Defendants eventually received were initially distributed to Nanotech Capital, LLC, a North Carolina limited liability company with which the Defendants were affiliated. Nanotech subsequently distributed its 500 shares of stock to the Defendants.

corporate covenants and, importantly, a prohibition on "[a]ny issuance of any stock, stock rights, warrants, options, participations, or securities convertible in stock to any person or entity" without unanimous shareholder consent. **Shareholders' Agreement, *supra*, ¶ 2(4).**

On the same date the parties entered into the Shareholders' Agreement, SmartBand and Plaintiff entered into a License Agreement whereby Plaintiff gave SmartBand certain rights with respect to his patents for which he received certain present and future monetary consideration. **Complaint, ¶ 10; Defendants' Answer, ¶ 10; Exhibit 1, License Agreement, *attached to* Anderson Declaration, *supra*.** The License Agreement provided for termination by Plaintiff (the licensor) in certain situations, by SmartBand (the licensee) in certain situations, or by either party in certain situations. **License Agreement, ¶ 11.** The License Agreement also provides for termination by either party, upon 30-days written notice, in the event certain specified funding benchmarks are not met. ***Id.*, ¶ 11(b)(3).**

Once all the agreements were in place, SmartBand began to seek funding. Approximately $250,000 was raised through a convertible debt offering with the intent "that this funding would provide a 'bridge to the first

round of equity funding.'" **Complaint, ¶ 12; Defendants' Answer, ¶ 12.**
The equity funding was to be raised through a private placement
memorandum ("PPM") and SmartBand sought to raise approximately $2.4
million through this avenue. *Id.*

In approximately August 2004, the facts and interpretation thereof
begin to diverge. Plaintiff asserts that "[i]nstead of concentrating their
efforts on the business plan and PPM, Defendants embarked on an illegal
plan and conspiracy to usurp voting control of SmartBand and to wrest
control of Smartbank [sic] from Plaintiff." **Complaint, ¶ 13.** Defendants
deny such accusation, charging that it was in fact Plaintiff's actions that
"undermined and blocked" certain agreements, including a voting trust
agreement that was negotiated and executed but, due to failure of certain
triggering events, never became effective. **Defendants' Answer, ¶ 13.**
Defendants also assert that Plaintiff essentially abandoned his duties to
SmartBand, focusing all attention and effort on his own company, Third-
Party Defendant Haleakala. *Id., ¶ 36.* Despite their disagreement
regarding most other post-August 2004 events, the parties do agree that at
some point "Dobson and certain other individuals [were awarded stock]
from the two initially established stock pools." **Complaint, ¶ 13;**

**Defendants' Answer, ¶ 13.** This additional stock dispersion "diluted Plaintiff's ownership interest in SmartBand from 90% ownership [immediately after the initial stock dispersion] to an approximate 79% ownership." *Id.*

According to Plaintiff, he remains a 79 percent owner of SmartBand. In addition, Plaintiff maintains that pursuant to what he terms the "Anderson Resolutions" of September 19, 2005, he is also the only remaining director and/or officer. **Complaint, ¶ 15; Exhibit 4, Anderson Resolutions, *attached to* Anderson Declaration, *supra.*** Plaintiff maintains that the "Anderson Resolutions" were valid as being executed by the majority shareholder, that they operated to remove each of the Defendants as directors and/or officers of SmartBand, and by ignoring such Resolutions, the Defendants have violated numerous North Carolina and federal laws. *See, e.g.,* **Complaint.**

Defendants maintain that at meetings of the SmartBand Shareholders and Directors on August 17, 2005 – meetings at which Plaintiff Anderson was present and participated – "unanimous action [was taken] to enable the issuance of additional shares of stock in SmartBand Technologies, Inc. to the Defendants and others and to split the

outstanding shares in preparation for issuance of a [PPM.]" **Defendants'**
**Answer, ¶ 15.** Defendants contend that after this unanimous action,
Plaintiff's shareholder interest was reduced below a majority of outstanding
shares, such that the "Anderson Resolutions" are of no effect.

**Defendants' Response and Memorandum in Opposition to Plaintiff's**
**Motion for Preliminary Injunction and In Support of Defendants'**
**Motion for Preliminary Injunction ("Defendants' Response in**
**Opposition to Preliminary Injunction"), filed February 21, 2006, at 13-**
**17.** Plaintiff argues that no such "unanimous action" occurred, and that the
stock certificates and corporate minutes reflecting such action are
fraudulent. **Plaintiff's Memorandum in Support of Preliminary**
**Injunction, at 11; Exhibits 1-5,** *attached to* **Defendants' Answer.**

Plaintiff has asserted claims against Defendants for breach of
fiduciary duty, unfair and deceptive trade practices, and for violation of
section 10(b) of the 1934 Securities Exchange Act. **Complaint.** Plaintiff's
claims are based on his contentions that the "Anderson Resolutions" are
valid, and by ignoring these resolutions, the Defendants are acting
wrongfully.

Defendants have asserted a counterclaim against Plaintiff for tortious interference with contract, breach of fiduciary duty, and unfair and deceptive trade practices. **Defendants' Answer, ¶¶ 34-42.** Defendants contend Plaintiff refused to perform his duties in regards to SmartBand and otherwise acted so as to drive SmartBand out of business to the detriment of their rights and interests.

Defendants have also brought a third-party complaint against Haleakala Research and Development, Inc., alleging tortious interference with contract, unfair and deceptive trade practices, and "tortious inducement, support and encouragement of Theodore Anderson's breach of his fiduciary duties to the Defendants[.]" **Defendants' Answer, ¶¶ 43-52.** Although it is not entirely clear from the pleading, Defendants' third-party complaint against Haleakala appears founded on an agency theory, that Plaintiff was acting both individually and as an agent for Haleakala in committing the alleged actions and/or inactions.

Finally, both Plaintiff and Defendants request that a preliminary injunction be entered against the other. **Complaint; Defendants' Answer.** Plaintiff seeks to enjoin Defendants from taking any further actions with respect to or on behalf of SmartBand, from using any confidential

information with respect to the patents, and from interfering with Plaintiff's grant applications, procurements, or other such matters. **Plaintiff's Memorandum in Support of Preliminary Injunction, at 20.** Defendants seek to enjoin Plaintiff and Haleakala from taking certain actions with respect to the intellectual property possessed by or licensed to SmartBand, request the Court order an accounting with respect to the use of such intellectual property by Plaintiff and Haleakala, and the surrender to Defendants of certain documents with respect to the intellectual property. **Defendants' Response in Opposition to Preliminary Injunction, at 28.**

In addition to the cross-motions for preliminary injunctive relief, the parties have filed three motions to dismiss. Plaintiff seeks dismissal of Defendants' counterclaim for tortious interference with contract pursuant to Fed. R. Civ. P. 12(b)(6); Third-Party Defendant Haleakala has moved for dismissal for both lack of personal jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(2) and 12(b)(6).

## II. PENDING MOTIONS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over the defendant.

> When a court's personal jurisdiction is properly challenged by motion under Federal Rule of Civil Procedure 12(b)(2), the jurisdiction question thereby raised is one for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Dowless v. Warren-Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir. 1986); 2A James W. Moore, Moore's Federal Practice P 12.07[2.-2] (1985 & Supp. 1992-93). Yet when, as here, the district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, the plaintiff need prove only a prima facie case of personal jurisdiction. *Combs*, 886 F.2d at 676. In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. *Id.*; *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984), *cert. denied*, 474 U.S. 826, [ ] (1985).

*Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993); *see also*, *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). All that is initially required to make a prima facie showing of personal jurisdiction are allegations that such jurisdiction exists. *See, Clark v. Remark*, 993 F.2d 228 (table), 1993 WL 134616, *2 (4th Cir. 1993) (citing *Dowless v. Warren-Rupp Houdailles, Inc.*, 800 F.2d 1305,

**1306 (4ᵗʰ Cir. 1986)).** However, a plaintiff may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not in fact exist. ***Id.* (citing *Barclays Leasing v. Nat'l Bus. Sys.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990)).** Rather, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant. ***Id.*** "Once both parties have presented evidence, factual conflicts must be resolved in favor of the party asserting jurisdiction for the purpose of determining whether [he] has made a prima facie showing of jurisdiction." ***Id.***

"[F]ederal courts exercise personal jurisdiction in the manner provided by state law." ***New Wellington, supra.*** Therefore, the first inquiry must be whether North Carolina's long-arm statute authorizes personal jurisdiction over the defendant. ***Id***. If jurisdiction is authorized by the long-arm statute, the Court's second inquiry is "whether exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment." ***Id.*** This two-part inquiry collapses into one where, as here, jurisdiction is asserted pursuant to N.C. Gen. Stat. § 1-75.4(1)(d), which provides the opportunity to exercise personal jurisdiction to the extent allowed by due process. ***See, Dillon v. Numismatic***

*Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630-31 (1977); *A.R.*

*Haire, Inc. v. St. Denis*, ___ N.C. App. ___, 625 S.E.2d 894, 899 (2006).

In such a case, the Court's inquiry focuses only on whether due process

would be offended by the exercise of jurisdiction.

Personal jurisdiction exists in two varieties, general and specific.

General jurisdiction exists where the defendant has such "continuous and

systematic" contacts with the forum state that he may be haled into court in

that forum on any claim. *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408 (1984). Specific jurisdiction is more narrow, existing

where the suit against the defendant arises out of his contacts with the

forum state or is related thereto. *Id.* In this case, the parties agree that if

there is personal jurisdiction over Haleakala, such jurisdiction is of the

specific variety.

> [The Fourth Circuit Court of Appeals has] synthesized the
> requirements of the Due Process Clause for asserting specific
> jurisdiction into a three-part test. Specifically, we consider: (1)
> the extent to which the defendant purposefully availed itself of
> the privilege of conducting activities in the State; (2) whether
> the plaintiffs' claims arise out of those activities directed at the
> State; and (3) whether the exercise of personal jurisdiction
> would be constitutionally reasonable.

*New Wellington*, 416 F.3d at 294-95 (citations and internal quotation

marks omitted). Only if all three parts are satisfied may a court exercise

specific jurisdiction over a defendant consistent with the Due Process Clause. ***See, e.g., Yates v. Motivation Indus. Equip. Ltd.*, 38 Fed. Appx. 174, 179 (4th Cir. 2002) (where plaintiff fails to establish one prong of the test, the others need not be considered).**

Third-Party Defendant Haleakala has moved to dismiss the third-party complaint on the basis that this Court lacks personal jurisdiction. Haleakala asserts that "Defendants must set forth sufficient evidence to make a *prima facie* case that Anderson's activities and actions in North Carolina were as an agent for, and on behalf of Haleakala. Conclusory allegations that Anderson was acting on Haleakala's behalf are insufficient. Merely alleging that Anderson is the sole stockholder or director of Haleakala is insufficient." **Plaintiff and Third-Party Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss Counterclaim and Third-Party Complaint ("Memorandum in Support of Motion to Dismiss"), filed March 31, 2006, at 10 (citations omitted).**

It is unclear upon which theories the Defendants assert personal jurisdiction exists over Haleakala. Their pleadings could be interpreted as asserting that: (1) Haleakala, irrespective of whether Plaintiff was acting as

its agent in performing the complained of actions and inactions, has subjected itself to specific jurisdiction; (2) that jurisdiction exists over Haleakala on the basis that it is the "alter ego" of the Plaintiff; and/or (3) that Haleakala has subjected itself to specific personal jurisdiction by and through the actions of its agent, the Plaintiff (*i.e.*, agency theory).

**1. Haleakala's Actions, Irrespective of Agency**

To the extent that Defendants assert personal jurisdiction exists on the first basis listed above, Defendants' assertion must fail.  Defendants have not offered a sufficient basis to find that Haleakala has subjected itself to the personal jurisdiction of this Court absent consideration of Plaintiff Anderson's purported actions as Haleakala's agent.

**2.  "Alter Ego"**

To the extent Defendants are attempting to base personal jurisdiction on an "alter ego" theory, they are attempting what the North Carolina Court of Appeals has termed "veil-piercing 'in reverse.'" ***Strategic Outsourcing, Inc. v. Stacks*, ____ N.C. App. ___, 625 S.E.2d 800, 805 (2006).**  Such

procedure for establishing personal jurisdiction is permitted. *Id.* However,

while permitted, the necessary showing is in no way minimal.

> In North Carolina, the corporate veil may be pierced to "prevent fraud or to achieve equity." Our Courts follow the instrumentality rule, which requires the following three elements for disregard of the corporate entity:
>> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time *no separate mind, will or existence of its own*; and
>> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
>> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

**Id., at 804 (quoting, *Glenn v. Wagner*, 313 N.C. 450, 454-55, 329 S.E.2d 326, 330 (1985)).**[4] When determining whether the first requirement,

---

[4] The North Carolina courts have not affirmatively settled the question of when attempting to pierce the veil of a foreign corporation, whether the veil-piercing law of North Carolina or the foreign jurisdiction controls. **See, *Strategic Outsourcing, supra.*** However, having considered the veil-piercing law of Massachusetts, the Court finds it similar to North Carolina and, in any event, determines the Defendants have not satisfied the requirements of Massachusetts law any more so than those of North Carolina. **See, e.g., *Attorney General v. M.C.K., Inc.*, 432 Mass. 546, 555 n.19, 736 N.E.2d 373, 380 n.19 (2000) (setting forth the "twelve**

"control," has been satisfied, North Carolina courts consider factors such as "1. Inadequate capitalization ('thin capitalization')[;] 2. Non-compliance with corporate formalities[;] 3. Complete domination and control of the corporation so that it has no independent identity[;] [and] 4. Excessive fragmentation of a single enterprise[.]" ***East Mkt. St. Square, Inc. v. Tycorp Pizza IV, Inc.*, ___ N.C. App. ___, 625 S.E.2d 191, 198 (2006) (quoting, *Glenn*, 313 N.C. at 455, 329 S.E.2d at 330-31).**

Here, Defendants' answer, counterclaim, and third-party complaint provides no basis whatsoever to conclude that Haleakala is the "alter ego" of the Plaintiff.  In fact, Defendants' only argument regarding "alter ego" is that "Haleakala is a 'nominal' Massachusetts corporation: it has no employees, no physical assets, no outstanding stock.  It has one officer, one director and one registered agent for service, all the same person: Ted Anderson." **Defendants' Response to Motions to Dismiss, at 2.**  Such argument is insufficient to pierce the corporate veil under either Massachusetts or North Carolina law; therefore, the "alter ego" theory does not provide a basis for personal jurisdiction in this case.

_____

**factors to be considered when a court is faced with the issue of setting aside corporate formalities").**

**3. Agency Theory**

Finally, the Court considers whether Haleakala has subjected itself to the jurisdiction of this Court based on consideration of both its actions outside of those purportedly committed by Plaintiff Anderson as an agent for Haleakala *and* the complained-of acts of omission and commission of Plaintiff Anderson while acting as an agent of Haleakala. Haleakala asserts that this theory must fail because Defendants have failed to proffer sufficient evidence to support their agency theory, thereby failing to carry their jurisdictional burden.

While it is true that Defendants' pleadings are heavy on speculation but light on evidence showing Plaintiff was "wearing multiple hats," it is important to note that this same agency theory forms the basis of the substantive claims against Haleakala. In other words, the question of jurisdiction over Haleakala is inextricably intertwined with the merits of Defendants' claims against the Third-Party Defendant. **See, Answer, ¶¶ 46-52; Defendants' Memorandum in Opposition to Motions to Dismiss, *supra*.** Given this intertwining, the fact that formal discovery has not yet begun, and that the "agency" issue turns on "information [that] is peculiarly within the [plaintiff and third-party] defendant's knowledge," the

Court finds that the better path at this point is to reserve ruling on the issue of personal jurisdiction. ***Joyner v. Wilson Mem'l Hosp., Inc.*, 38 N.C. App. 720, 723-24, 248 S.E.2d 881, 883 (1978)**, ***Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984) (where "the facts upon which the jurisdictional issue is based [are] so closely intertwined with the facts involving the merits of the case," it is a better practice to reserve ruling on the personal jurisdiction issue); *Klockner-Pentaplast of Am., Inc. v. Roth Display Corp.*, 860 F. Supp. 1119, 1122 (W.D. Va. 1994).** After discovery, should Defendants be unable to sufficiently establish that Haleakala is subject to personal jurisdiction of this Court, the Court will grant a renewed motion by Haleakala to dismiss on those grounds. **Exhibit 1, Second Supplemental Declaration of Theodore R. Anderson, *attached to* Memorandum in Support of Motions to Dismiss, ¶ 9.**

**B. Failure to State a Claim Upon Which Relief Can be Granted**

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is to accept as true all well-pleaded allegations and view the complaint in a light most favorable to the Plaintiff. ***Venkatraman v. REI***

***Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005);  *T.G. Slater & Son, Inc. v.***

***Donald P. & Patricia A. Brennan LLC***, 385 F.3d 836, 841 (4th Cir. 2004).

All reasonable inferences should also be drawn in the Plaintiff's favor.

***Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).**  However, the

Court "need not accept as true unwarranted inferences, unreasonable

conclusions, or arguments."  ***Eastern Shore Mkt.'s Inc., v. J.D. Assoc.'s***

***Ltd. P'Ship,* 213 F.3d 175, 180 (4th Cir. 2000).**  The Court likewise should

not "accept as true allegations that contradict matters properly subject to

judicial notice or by exhibit."  ***Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir.**

**2002) (citations and internal quotations omitted).**  In addition:

> The presence of a few conclusory legal terms does not insulate
> a complaint from dismissal under Rule 12(b)(6) when the facts
> alleged in the complaint cannot support the legal conclusion.
> And although the pleading requirements of Rule 8(a) are very
> liberal, more detail often is required than the bald statement by
> plaintiff that he has a valid claim of some type against
> defendant.  This requirement serves to prevent costly discovery
> on claims with no underlying factual or legal basis.

***Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir.**

**2001) (citations and internal quotations omitted).**  A court is not bound

by the legal conclusions drawn in a complaint, and "self-serving, inaccurate

legal conclusions cannot rescue a factually deficient complaint."  ***Faulkner***

***Adver. Assoc., Inc. v. Nissan Motor Corp.*, 945 F.2d 694, 695 (4th Cir.
1992); *see also*, *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore
Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979) ("While it is true that
this court . . . must accept the factual allegations of the complaint, we
are not so bound with respect to its legal conclusions.").** Finally, a
motion to dismiss should be granted only where it is clear that no set of
facts consistent with the allegations in the complaint could support the
asserted claim for relief. ***See*, *Migdal*, *supra,* at 325; *Lambeth v. Bd. of
Comm'rs of Davidson County, NC*, 407 F.3d 266, 268 (4th Cir.), *cert.
denied*, 126 S. Ct. 647 (2005).**

### 1. Plaintiff's Motion to Dismiss

Plaintiff's Rule 12(b)(6) motion seeks dismissal as to any purported
counterclaim for tortious interference with contract. Plaintiff asserts that
there are only two possible contracts that could form the basis for such a
claim - the License Agreement, and the Shareholders' Agreement. Plaintiff
argues, *inter alia*, that Defendants have no standing to bring such a claim
based on the License Agreement between Plaintiff and SmartBand
because they were not parties to that Agreement. As to the Shareholders'

Agreement, Plaintiff argues he is a party to such contract and "[i]t is axiomatic that a party cannot intentionally interfere with its own contract." **Memorandum in Support of Motions to Dismiss, at 15.** Defendants respond that the counterclaim clearly alleges "the existence of additional agreements [for SmartBand] to compensate the defendants with awards of shares of stock in lieu of cash compensation," and that both the awarding of such shares and the value thereof have been "jeopardized and diminished by tortious interference by Anderson and Haleakala." **Memorandum in Opposition to Motions to Dismiss, at 7.** In his reply, Plaintiff argues that as an officer, director, and shareholder of SmartBand, he has a qualified privilege to interfere with any contract between SmartBand and Defendants, subject only to limited exceptions which Defendants' counterclaim has failed to establish. **Plaintiff and Third-Party Defendant's Reply in Support of Motion to dismiss Counterclaim and Third-Party Complaint ("Reply in Support of Motions to Dismiss"), filed April 24, 2006, at 8-10.**

A claim for tortious interference with contract in North Carolina consists of five elements:

> "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a

third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff."

***Bloch v. Paul Revere Life Ins. Co.*, 143 N.C. App. 228, 239, 547 S.E.2d 51, 59 (2001) (quoting *Embree Constr. Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992)).** Plaintiff argues that as a "corporate insider" he has a qualified privilege to interfere with any contract between SmartBand and Defendants and essentially challenges the sufficiency of the pleading in regards to the fourth element of the claim. ***See*, Reply in Support of Motions to Dismiss, *supra*.** Therefore, the issue is what the complaint must substantively contain in order to properly allege a claim against a "corporate insider" for tortious interference with contract and survive a motion under Rule 12(b)(6).

In North Carolina, a corporate insider can be held liable for tortious interference with contract only in particular circumstances due to the privilege typically enjoyed by such persons. ***See, Embree Const. Group, supra.***

The privilege, however, is qualified, not absolute; the presumption that an officer's acts are in the corporation's interest and thus justified is overcome when the means or the officer's motives are improper. The better rule, which is apparently followed by most courts, does not grant absolute

protection to corporate directors.  In short, those who act for their *own* benefit may be held personally liable.

***Id.*, at 498-99, 411 S.E.2d at 924 (citations and internal quotations omitted).**  Accordingly, a complaint is substantively sufficient as to the fourth element of a claim for tortious interference with contract against a "corporate insider" when the complaint "alleges facts supporting the allegation that the individual defendants' actions were in their personal interest[.]"  ***Id.*, at 499, 411 S.E.2d at 924-25.**

Having reviewed the substance of Defendants' counterclaim against Plaintiff for tortious interference with contract, the Court finds such claim to be sufficiently pled.  The counterclaim pleads (1) the existence of a contract between Defendants and SmartBand which conferred rights upon the Defendants, (2) that Plaintiff knew of the contract, (3) that Plaintiff intentionally interfered therewith, and (4) that Plaintiff's actions resulted in damage to Defendants.  ***See,* Defendants' Answer, ¶¶ 35, 37.**  The counterclaim also alleges that in his actions, Plaintiff was acting for his own benefit rather than in the corporate interest.  ***Id.,* ¶ 36.**  This is all that is required at this stage.[5]

---

[5] Plaintiff also asserts that he "is entitled to know, and Defendants must plead, with what specific agreement they allege [he] has tortiously

For the foregoing reasons, Plaintiff's motion to dismiss any purported counterclaim based on tortious interference with contract for failure to state a claim upon which relief can be granted is denied.

## 2. Third-Party Defendant's Motion to Dismiss

Haleakala has also moved for dismissal of the third-party complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing[6] that Defendants' claims must fail because they are based on a theory of agency, but the complaint "merely plead[s] the legal conclusions [sic] of agency" rather than "plead[ing] facts which, if proved, could establish the existence of an agency relationship." **Reply in Support of Motions to Dismiss, at 10-11;**

---

interfered." **Reply in Support of Motions to Dismiss, at 9.** The counterclaim alleges the existence of a valid contract between Defendants and SmartBand. If Plaintiff determines that the pleading is "so vague or ambiguous" that he "cannot reasonably be required to frame a responsive pleading," he is free to make a proper and properly supported motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

[6] Haleakala also addresses arguments to the issue of Defendants' claim for tortious interference with contract on an "alter ego" theory. ***See*, Reply in Support of Motions to Dismiss, at 10-11.** Having previously addressed the utter lack of support in either the third-party complaint or memorandum in opposition to the motion to dismiss for a finding of "alter ego," and with Defendants addressing no arguments to the "alter ego" argument in that portion of their memorandum concerning Haleakala's Rule 12(b)(6) motion, the Court sees no need to address those arguments here.

**Memorandum in Opposition to Motions to Dismiss, at 6-7.**  Defendants

argue that "the third Party Complaint alleges that Anderson is the sole

officer of Haleakala and, at paragraphs 46 and 47, that Anderson, at the

time he engaged in the wrongful conduct detailed in paragraphs 32 through

42 . . . was acting in a dual capacity and as an agent of Haleakala."

**Memorandum in Opposition to Motions to Dismiss, at 6.**

The Court finds Haleakala's position to be without merit.  First, this

does not appear to the Court as a case where a plaintiff has merely "pled

the legal conclusion of agency."  Rather, Defendants have pled that

Anderson was the sole officer and director of Haleakala (*i.e.*, an agent of

Haleakala) and he was acting on behalf of Haleakala and in the scope of

his agency when performing the complained-of acts of omission and

commission.  Second, even assuming the Court were inclined to agree with

Haleakala that the Defendants have done nothing more than "plead the

legal conclusions [sic] of agency," the Court does not believe that dismissal

pursuant to Rule 12(b)(6) would be appropriate.  **Reply in Support of**

**Motions to Dismiss, at 13-14**.  Haleakala cites a number of cases in

support of its position that the third-party complaint is defective.  However,

the Court finds instructive a fairly recent opinion regarding such argument

from the district court for the Northern District of Illinois, the same

jurisdiction in which many of the cases cited by Haleakala arose.

> The Usinor Defendants argue that Plaintiffs have failed to allege sufficient facts to show that either Leeco or Usinor USA was under control of Usinor or could subject Usinor to liability. Citing *Rand Bond of N. Am., Inc. v. Saul Stone & Co.*, 726 F. Supp. 684, 687 (N.D. Ill. 1989), and several other federal district court cases, Defendants contend that Plaintiffs are required to plead facts which would establish agency. In the court's view, this argument blurs the distinction between the pleading standards in Illinois and federal courts. While state law provides the substantive law for state law claims brought in federal court, federal law establishes the pleading standard. Federal courts require only notice pleading. Under Fed. R. Civ. P. 8(a), this pleading standard is satisfied by "a short and plain statement of the claim" that gives the defendant fair notice of what the claim is and the grounds upon which it rests.
>
>          *             *            *
>
> A plaintiff alleging agency in Illinois state court may have to set forth specific facts, but in federal court, "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he basis his claim." The existence of agency is a question of fact, *see Brunswick Leasing Corp. v. Wisconsin Central, Ltd.*, 136 F.3d 521, 526 (7th Cir. 1998), so it would be improper for a court to dismiss a claim on the basis of an insufficient factual allegation of agency, without giving the plaintiff a chance to prove the existence of the agency relationship. A federal court should not dismiss a claim for the plaintiff's failure to plead facts, rather, the claim should be dismissed only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley* [*v. Gibson*], 355 U.S. [41,] 45-46 [(1957)].

*Caterpillar, Inc. v. Usinor Industeel*, 393 F.Supp.2d 659, 670 (N.D. Ill

2005); *see also*, *United States v. Mancha*, 230 F.3d 1355 (table), 2000

**WL 1283058, \*2 (4th Cir. 2000) ("Whether an agency relationship exists is a question of fact based on all the circumstances."); *Miller v. Piedmont Steam Co., Inc.*, 137 N.C. App. 520, 528 S.E.2d 923 (2000) (treating agency as a question of fact).**

The question at this stage is not whether Third-Party Plaintiffs can ultimately establish that Plaintiff Anderson was acting as an agent for Haleakala during the actions and inactions alleged. Rather, the Court's only inquiry now is whether "it appears beyond doubt that the [Third-Party Plaintiffs'] can prove no set of facts in support of [their] claim." ***Conley, supra; see also, Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334 (4th Cir. 2006).** The Court does not find this to be the case and denies Haleakala's motion to dismiss for failure to state a claim upon which relief can be granted.

## C. Preliminary Injunction

The decision to grant or deny interim injunctive relief is within the sound discretion of the district court. ***See, Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994).**

"'[G]ranting a preliminary injunction requires that a district court, acting on

an incomplete record, order a party to act, or refrain from acting, in a certain way.  The danger of a mistake in this setting is substantial.'" *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002) **(quoting** *Hughes Network, supra***).**  As such, a preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, **952 F.2d 802, 811 (4th Cir. 1992) (quoting** *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* **882 F.2d 797, 800 (3d Cir. 1989)).**  "Whenever the extraordinary writ of injunction is granted, it should be tailored to restrain no more than what is reasonably required to accomplish its ends. Particularly is this so when preliminary relief, on something less than a full record and full resolution of the facts, is granted." *Consolidation Coal Co. v. Disabled Miners of S. W. Va.*, **442 F.2d 1261, 1267 (4th Cir. 1971);** *see also***,** *Anheuser-Busch, Inc. v. Stroh Brewery Co.***, 750 F.2d 631, 653 (8th Cir. 1984) ("Injunctions must be tailored narrowly to remedy the specific harm shown rather than to enjoin all possible breaches of the law.").**

The Court applies a four-part balancing test to determine whether interim injunctive relief should issue.  ***Direx Israel, supra.***  Under this balancing test, the Court must consider  "'(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.'"[7]  ***Willis v. Town of Marshall*, 426 F.3d 251, 267 (4th Cir. 2005) (quoting *Direx Israel,* at 812)*; see also*, *Wetzel v. Edwards*, 635 F.2d 283, 287 (4th Cir. 1980).**  Although no one factor is generally dispositive,[8] the two most important are "probable irreparable injury to the plaintiff if an injunction is not issued and likely harm to the defendant if an injunction is issued." ***Id.***

> When deciding whether to grant a preliminary injunction, the
> court must first determine whether the plaintiff has made a
> strong showing of irreparable harm if the injunction is denied; if

---

[7] The Court is also guided by Fed. R. Civ. P. 65 which governs the procedural requirements attendant to the granting of injunctive relief.

[8] A failure to show any risk of irreparable harm is sufficient grounds for denial of a motion for interim injunctive relief, as likelihood of success on the merits alone - without any showing of a risk of irreparable harm - is not sufficient to warrant the issuance of a preliminary injunction.  ***See,*** **Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).**

such a showing is made, the court must then balance the
likelihood of harm to the plaintiff against the likelihood of harm
to the defendant.  If the balance of the hardships tips decidedly
in favor of the plaintiff, then typically it will be enough that the
plaintiff has raised questions going to the merits so serious,
substantial, difficult, and doubtful, as to make them fair ground
for litigation and thus for more deliberate investigation.  But if
the balance of hardships is substantially equal as between the
plaintiff and defendant, then the probability of success begins
to assume real significance, and interim relief is more likely to
require a clear showing of a likelihood of success.

***Scotts* Co., 315 F.3d at 271 (internal quotations and citations omitted).**

When considering the harm to the parties flowing from the issuance or

non-issuance of the requested preliminary injunction, the real issue for the

Court's consideration is the level of harm resulting from the *improper* grant

or denial of the petitioner's request.  *Id.,* **at 284.**

"If the judge grants the preliminary injunction to a plaintiff who it
later turns out is not entitled to any judicial relief – whose legal
rights have not been violated – the judge commits a mistake
whose gravity is measured by the irreparable harm, if any, that
the injunction causes to the defendant while it is in effect.  If the
judge denies the preliminary injunction to a plaintiff who it later
turns out is entitled to judicial relief, the judge commits a
mistake whose gravity is measured by the irreparable harm, if
any, that the denial of the preliminary injunction does to the
plaintiff."

*Id.***, at 284-85 (quoting *American Hosp. Supply Corp. v. Hospital**

*Prods. Ltd.***, 780 F.2d 589, 593 (7th Cir. 1986)).**  The Court focuses on the

harm attendant to an *improper* grant or denial because there is no "harm,"

at least as that term is used in the realm of equity and equitable relief, where a party is restrained from doing that which he may properly be restrained from doing, or where the court refuses to restrain a party from doing that which he may properly do.

### 1. Plaintiff's Motion

Plaintiff seeks to enjoin Defendants from taking any further actions with respect to or on behalf of SmartBand, from using any confidential information with respect to the patents, and from interfering with Plaintiff's grant applications, procurements, or other such matters. **Plaintiff's Memorandum in Support of Preliminary Injunction, at 20.** In embarking on the four-balancing test, the Court will first consider Plaintiff's likelihood of success on the merits of his underlying claims against the Defendants.

Plaintiff's claims against the Defendants are premised on the validity of the "Anderson Resolutions;" these are in turn dependant upon a determination of what action, if any, was approved at the August 17, 2005, SmartBand Shareholders and Directors meetings. The events of these meetings are bitterly disputed. Plaintiff has proffered both direct and

circumstantial evidence tending to show that no final decision regarding the stock distribution was reached, and that he remained (and still remains) holder of 79 percent of SmartBand's stock. Defendants have proffered both direct and circumstantial evidence tending to show that a final decision *was* reached regarding the distribution of stock, that same was passed by unanimous vote, and that Plaintiff now holds (and has held since August 17, 2005) far less than a majority of SmartBand's stock.

A party is not required to ultimately prove its case at this early, preliminary injunction stage. ***See, AttorneyFirst, L.L.C. v. Ascension Entm't, Inc.*, 144 Fed. Appx. 283, 287 (4th Cir. 2005) (quoting, *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).** However, it is difficult for this Court to consider Plaintiff as having established a strong likelihood of success on the merits when the factual issue underlying the merits of his claims is one that is so hotly contested by the parties and on which there is both direct and circumstantial evidence supporting each side. ***See, e.g., Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F.Supp.2d 277, 283 n.21 (S.D.N.Y. 1998); *Futuredontics, Inc. v. Applied Anagramics*, 1997 U.S. Dist. LEXIS 22249, *8 (C.D. Cal. 1997); *Atlantic Terminal Urban Renewal Area Coal. v. New York City Dep't of Envtl. Prot.*, 1990 WL**

**3928, \*2-3 (S.D.N.Y. 1990).** While Plaintiff, like Defendants, has "clothe[d]

[him]self in robes of white, and paint[ed] the [opposing party] as black as

pitch," such is simply not sufficient in the eyes of the Court. ***McDowell v.***

***Nat'l Maritime Union of America*, 1982 WL 2108, \*4 (S.D.N.Y. 1982).**

Plaintiff has not established that he, as opposed to the Defendants, is

clearly likely to succeed on the issue of what did or did not occur at the

August 17, 2005, SmartBand Shareholders and Directors meetings.

Nevertheless, the Court does find that there are clearly "questions

going to the merits so serious, substantial, difficult, and doubtful, as to

make them fair ground for litigation[.]" ***Scotts Co.*, 315 F.3d at 271**

**(quotations omitted).** The issue then,[9] in regards to Plaintiff's entitlement

to preliminary injunctive relief, is whether he has established that the

balance of hardships "tips decidedly in [his] favor[.]" ***Id.* (quotations**

**omitted).**

---

[9] Consideration of the public interest is also part of the balancing test
employed by this Court. Having considered the arguments of the parties,
however, the Court finds this factor neutral. The public interest is best
served by having the proper party in command of a corporation doing
business in this State and having parties be truthful with this Court. At this
stage, it is impossible to know which party should properly be at the helm
of SmartBand, or which party is being less than candid with the Court in
regards to what occurred at the August 17, 2005, SmartBand meetings.

Plaintiff asserts that he will suffer irreparable injury without a preliminary injunction. He avers that unless Defendants are enjoined from moving ahead with the PPM and from "mak[ing] false statements and representations" regarding Plaintiff to the United States Army and Navy, "Plaintiff's reputation will be severely damaged, threatening Plaintiff's ability to raise capital in the future in order to commercialize the technology represented by the Patents," and his "ability to obtain current and future grants will be prejudiced, severely impacting his ability to continue his research and development activities." **Plaintiff's Memorandum in Support of Preliminary Injunction, at 18-19.** In contrast to this harm, Plaintiff asserts that Defendants will suffer no irreparable injury from a preliminary injunction prohibiting such activities because "Defendants have delayed the issuance of a PPM for over a year and a half in their attempt to wrest control of SmartBand from Plaintiff." Therefore, Defendants cannot seriously argue that they would be irreparably harmed "by any delay in issuance of their fraudulent PPM, by their inability to represent themselves as officers, directors, or employees of SmartBand, or by their inability to use the confidential information belonging to Plaintiff, during the pendency of any preliminary injunction." *Id.*, **at 19-20.**

Inasmuch as Defendants have represented to the Court, both in their filings and at the hearing on the current motions, that they have no intent to move forward with the PPM until this matter is resolved, the Court finds that the balance of hardships does weigh decidedly in Plaintiff's favor as to that portion of the preliminary injunction motion regarding the PPM. The Court will, therefore, issue an appropriate preliminary injunction respecting such issue. As to representing themselves as officers, directors, or employees of SmartBand, the Court fails to see how such is or would irreparably harm Plaintiff. Furthermore, whether Defendants hold such positions is dependent on the highly contested issue of fact discussed previously. The Court is extremely hesitant to issue an order favoring only one party, the correctness of which depends on resolution of such issue. Therefore, the Court will not order Defendants to refrain from representing themselves as officers, directors, or employees of SmartBand. The Court will, however, order that Defendants not represent themselves as being wholly in control of SmartBand to the exclusion of Plaintiff pending the final resolution of the merits. As will be noted below, a similar order will issue regarding representations by Plaintiff.

**2. Defendants' Motion**

Defendants seek a preliminary injunction that would enjoin Plaintiff and Haleakala from taking certain actions with respect to the intellectual property possessed by or licensed to SmartBand, order an accounting with respect to use of such intellectual property by Plaintiff and Haleakala, and order the surrender to Defendants of certain documents with respect to the intellectual property. **Defendants' Response in Opposition to Preliminary Injunction, at 28.**

Considering first Defendants' likelihood of success on the merits as to their underlying claims, the Court finds that, although such claims are not (as Plaintiff's are) necessarily dependent on resolution of what occurred at the August 17, 2005, SmartBand meetings, Defendants have simply not established to the satisfaction of the Court that they have a strong likelihood of success on the merits of their claims against Plaintiff. As Defendants' claims against Haleakala are dependant upon their claims against Plaintiff, Defendants have similarly failed to show a strong likelihood of success on the merits of their third-party complaint.

However, having considered the various exhibits filed in support of their position, as well as those of Plaintiff, the Court does believe that there

are "questions going to the merits so serious, substantial, difficult, and doubtful, as to make them fair ground for litigation." **Scotts Co., supra (quotations omitted).** Therefore, it must be determined whether the Defendants, in regards to the preliminary injunctive relief sought, have shown that the balance of hardships "tips decidedly in [their] favor[.]" **Id. (quotations omitted).**

Defendants assert that Plaintiff will not be irreparably harmed if he is prevented from, among other things, usurping corporate opportunities, but that Defendants will suffer irreparable harm because, without a preliminary injunction, Plaintiff will eventually destroy any value left in SmartBand's intellectual property by continuing to provide same to Haleakala and others. **Defendants' Response in Opposition to Preliminary Injunction, at 21-23.** For his part, Plaintiff asserts that corporate opportunities have not and are not being usurped because his actions and those of Haleakala are not of commercialization. Rather, Plaintiff argues that his work, and that of Haleakala, is completely within the reservation of rights contained in the License Agreement, which gives Plaintiff the right to conduct research and experimentation. **License Agreement, supra, ¶ 1(c).** Therefore, as to that portion of Defendants' motion that pertains to

the usurping of corporate opportunities through commercialization efforts and other such matters, the Court finds that the balance of hardships tips decidedly in their favor, in that any harm caused by enjoining such activities should be negligible given Plaintiff's statement that only research and experimentation, not commercialization, is being conducted. Therefore, the Court will grant injunctive relief as to the commercialization efforts pending final resolution of the merits; however, the injunction will not forbid any activity which Plaintiff may clearly properly perform, regardless of the final outcome of this case, due to the reservation of rights contained in the License Agreement.

In regards to the Defendants' requests for an accounting as to the use of certain intellectual property by Plaintiff and Haleakala and the surrender to Defendants of certain documents, the Court does not find that the balance of hardships tips decidedly in favor of Defendants in regards to these matters. The Court can find no irreparable harm to Defendants from the failure to order an immediate accounting by Plaintiff and Haleakala, and such information can be sought by Defendants during discovery. In addition, whether Plaintiff and/or Haleakala properly hold certain materials and documents respecting SmartBand is dependant on resolution of what

did or did not occur at the August 17, 2005, SmartBand meetings. Pending resolution of such issue, the Court will not order that either side relinquish all items that may potentially belong to SmartBand to the other.

Finally, as referenced earlier in discussion of Plaintiff's motion for preliminary injunctive relief, both sides appear highly concerned with the opposing party "poisoning the marketplace" against such party and such party's interests. The Court will, therefore, order Plaintiff, as it did Defendants, to refrain from representing himself as solely in control of SmartBand to the exclusion of Defendants pending a final resolution of this matter on the merits. The Court will also order *both* Plaintiff and Defendants to stop defaming one another, whether it be in print or spoken word, to third parties.

### 3. Both Parties' Motions

As a final word regarding the parties' motions for preliminary injunctive relief, the entity quite likely suffering the most as a result of the instant dispute between these parties – SmartBand Technologies, Inc. – is not a party to this case. SmartBand is not a party precisely because it is the control of SmartBand that is one of, if not the, central factual disputes.

Both Plaintiff and Defendants have waxed poetic regarding their concern

for SmartBand and their concern that whatever value SmartBand has left, if

any, remains protected pending a final resolution of this case. The Court

has taken the parties at their word, and has attempted to fashion an

appropriate injunction to protect not only their interests but also that of

SmartBand. The Court, as referenced earlier, also believes that the public

interest in this case, if any, is on the side of proper management at the

helm of SmartBand. For all of these reasons, the Court finds that the

propriety of the injunctive relief granted to Plaintiff against Defendants is

dependent upon the injunctive relief granted to Defendants against

Plaintiff, and vice versa. Consequently, should either party disrespect the

preliminary injunctive relief granted by this Memorandum and Order and

the Preliminary Injunction filed contemporaneously herewith, the Court will

*sua sponte* vacate the entire injunction. In other words, while the Court

believes that Plaintiff, Defendants, and SmartBand all need protection

while this dispute is sorted out, it does not believe that the balancing test

conducted as to such relief would render the same outcome were one

party to be enjoined from certain activities while the other allowed to

operate freely.

## III. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff Anderson's motion to dismiss for failure to state a claim upon which relief can be granted is **DENIED**.

**IT IS FURTHER ORDERED** that Third-Party Defendant Haleakala's motion to dismiss for failure to state a claim upon which relief can be granted is **DENIED**.

**IT IS FURTHER ORDERED** that Third-Party Defendant Haleakala's motion to dismiss for lack of personal jurisdiction is **DENIED** without prejudice to renew.

**IT IS FURTHER ORDERED** that the motions of Plaintiff and the Defendants for injunctive relief are **GRANTED IN PART and DENIED IN PART**, as reflected in the Preliminary Injunction filed contemporaneously herewith.

Signed: May 22, 2006

Lacy H. Thornburg
United States District Judge