IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:06cv2

| | |
|---|---|
| THEODORE R. ANDERSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JEFFREY R. DOBSON, GERALD W. )<br>SODERQUIST, ROBERT W. )<br>MIDDLETON and ARTHUR D. )<br>ACKERMAN, )<br>)<br>Defendants and Third-Party Plaintiffs, )<br>)<br>vs. )<br>)<br>HALEAKALA RESEARCH AND )<br>DEVELOPMENT, INC., )<br>)<br>Third-Party Defendants. ) | **DEFENDANTS / THIRD PARTY PLAINTIFFS' SECOND MOTION FOR PROTECTIVE ORDER** |

Defendants / Third Party Plaintiffs Dobson, Soderquist, Middleton and Ackerman, ( hereinafter "defendants") through counsel move pursuant to Rules 26 (c) and 45 (c) of the Federal Rules of Civil Procedure that a protective Order be issued with respect to documents and information produced or disclosed in connection with discovery in this matter, including but not limited to written discovery requests exchanged by the parties and subpoenas issued by counsel for parties to the case and directed to non-party persons and entities . In so moving, the defendants state:

1. On June 7, 2006, counsel for the plaintiff issued four subpoenas and on June 8, 2006, counsel for the plaintiff issued five additional subpoenas . These nine (9) subpoenas

R&S 505408-1

were issued by counsel for the plaintiff and the third-party defendant to persons or corporations which were either corporations in strategic alliances with SmartBand Technologies, Inc., ("SmartBand"), corporate counsel for SmartBand and/ or corporations where one or more of he defendants were principals, officers or directors, or to SmartBand, addressed and delivered to SmartBand in care of one or more individual defendants, and each subpoena directed the witness to produce:

> "1) All documents concerning , referring or relating to SmartBand.
> 2) All documents concerning , referring or relating to Theodore R. Anderson and/or Haleakala.
> 3) All documents concerning , referring or relating to the Patents.
> 4) All documents concerning , referring or relating to the Technology."

2. On June 12, defendants counsel corresponded by e-mail to plaintiff's counsel raising issues of attorney-client privilege, authority to act on behalf of SmartBand in connection with the subpoenas, and stated,

> "The subpoenas raise additional issues regarding 9)the need for appropriate agreements and protective orders limiting re-disclosure of the documents produced, 10) the location and manner of production ( For example, the first two subpoenas to SmartBand call for production of , as the first category, " 1.All documents concerning, referring or relating to SmartBand"; this literally is all the documents in possession of SmartBand, and production at remote locations would be highly impractical. ); also,11) who is going to pay for the copying costs, etc. associated with these subpoenas to SmartBand?
>
> My suggestion is that we attempt to work out a consent order covering these issues . The only alternative I can see is to file a motion for a protective order as a vehicle to obtain the Court's assistance and direction in these matters, and I ask that you treat this as a good-faith effort to resolve discovery disputes prior to filing such a motion. If you are agreeable, I will draft an initial attempt at a consent order". (**Exhibit 1**, attached).

3. On June 13,2006, plaintiff's counsel responded with a difference of opinion regarding the application of attorney-client privilege but stated,

> "We would also be pleased to enter into a standard agreed confidentiality order to limit use of any truly confidential documents produced by Defendants, Anderson, Haleakala, SmartBand (or Womble Carlyle and Mr. Derrick) to this case, and prevent disclosure to third parties outside of the context of this action. If you have such a standard agreement that has been accepted by the Western District of North Carolina in the past, please provide it to me for my review. We are not agreeable to any further delay of this case. If you wish for us to consider a confidentiality order, please forward a proposed draft to us expeditiously". (**Exhibit 2**, attached).

4. On June 21, 2006, the defendants, through counsel, filed a Motion for Protective Order, **Document 48**, which sought, in part, that documents and information,

> "which are proprietary documents and information regarding the business operations of SmartBand Technologies, Inc., the patents licensed to Smart Band or the technology which is involved in the patents and the business operations of SmartBand and that discovery of documents which are proprietary documents and information regarding the business operations of SmartBand Technologies, Inc., the patents licensed to Smart Band or the technology which is involved in the patents and the business operations of SmartBand [ ] be produced subject to a protective order strictly restricting the use and re-disclosure of such documents in order to protect the proprietary interest of SmartBand Technologies, Inc. and the interest of the plaintiff and defendants in that corporation".

That motion for protective order further stated,

> "With respect to the last category of documents, upon consultation with counsel for Anderson and Haleakala Research and Development, the parties are agreed to such a protective order and will submit proposed terms to the Court for integration into an Order which addresses the remaining objections of the defendants."

5. That representation regarding agreement between counsel regarding proprietary information was made in good faith upon the exchange of e-mail correspondence between counsel, attached Exhibits 1, 2 and 3 and was not disputed in any respect by plaintiff or third –party defendant in their opposition to the motion for protective order.

6. While the Motion for Protective Order was pending, counsel for the parties exchanged e-mail correspondence and defendants counsel submitted a draft consent protective order regarding proprietary information. (**Exhibit 3**, attached).

7. The order entered by the Court on July 24, 2006, in connection with the Motion for Protective Order, **Document 6**7, makes no mention and contains no discussion of or specific provision for protection of proprietary documents and information. Accordingly, the defendants are under the impression that its terms are limited to documents and information which were the subject of objections on the grounds of attorney-client privilege.

8. On July 25, 2006, the day after entry of the Protective Order regarding attorney-client communications, **Document 67**, plaintiff's counsel corresponded by e-mail acknowledging the scope of Protective Order that had been entered by the Court on the preceding day and attached an alternative draft of a proposed protective order dealing with proprietary documents and information, and specifically requested that SmartBand documents be provided/ produced immediately, i.e., pending finalization of a protective order regarding proprietary information. (**Exhibit 4**, attached).

9. In good-faith reliance upon a belief that there was agreement regarding the need for appropriate restrictions on use and re-disclosure of proprietary documents and information, before the July 24, 2006, Protective Order was entered, proprietary documents were provided in response to subpoenas issued by counsel for the plaintiff and the third-party defendant to persons or corporations which were either corporations in strategic alliances with SmartBand Technologies, Inc., ("SmartBand"), corporate counsel for SmartBand and/ or corporations where one or more of he defendants were principals, officers or directors, or to SmartBand, addressed and delivered to SmartBand in care of one or more individual defendants. Further, counsel for defendant urged non-party corporations respond to the pending subpoenas by providing proprietary documents to

plaintiff's counsel without delay and to submit those proprietary documents under a cover document indicating that those documents were "Confidential" and "Produced under Court Order", in anticipation of entry of such an order, a procedure which plaintiff's counsel ratified. (**Exhibits 5**, attached).

10. Defendants produced over 20,000 pages of electronic files and documents in response to the subpoenas directed to SmartBand and Request for Production seeking documents in the individual defendants' custody or control regarding SmartBand. The other subpoenaed corporations collectively produced several hundred additional pages of documents. Those documents include thousands of pages of proprietary information regarding, e.g., the patented technology, potential applications being considered for commercialization opportunities, multiple drafts of private equity placement memoranda.

11. At the depositions of the parties an attorney Christopher Derrick between August 8 and 11, 2006, counsel for the plaintiff declined to discuss provisions for dealing with proprietary information in the course of the depositions and indicated that she was too preoccupied and focused on the depositions. Defendant 's counsel confirmed the status of discussions regarding a protective order for proprietary documents on August 9, 2006, to which counsel for plaintiff and third-part –defendant responded on August 13 ,2006 and on August 14, 2006, counsel for defendants submitted to counsel for plaintiff and third-party defendant by e-mail another revised draft of a protective order regarding proprietary documents and information and an explanatory cover letter, ( **Exhibit 6 and 7**, attached).

12. On September 5, 2006, counsel for defendants wrote plaintiff's counsel again in an effort resolve the apparent impasse regarding the need for and/or terms of a protective order regarding proprietary documents and information. (**Exhibit 8**, attached) To date, plaintiffs counsel has not responded to the August 14 proposal nor the September 5

correspondence. Accordingly, defendants, through counsel represent to the Court that counsel have conferred and have been unable to resolve this issue by agreement.

13. Defendants respectfully request entry or a Protective Order pursuant to Rule 26(c) FRCP imposing prohibitions and limitations on the re-disclosure, use, retention and destruction of confidential documents and information, substantially in the form of **Exhibit 7**, attached, with such additional provisions as may be requested by counsel for plaintiff and third-party defendant regarding documents subject to non-disclosure agreements with government agencies.

## Memorandum in Support of Motion

This litigation involves suit and counter-claim for declaration of the rights of the plaintiff and defendants as shareholders who dispute their respective ownership of SmartBand Technologies, Inc. ( hereinafter "SmartBand"), a North Carolina Corporation created for the purpose of raising capital and to develop patented technology dealing with plasma antennas into commercially viable products. The plaintiff Anderson is primarily an inventor and scientist and the defendants are primarily business development professionals . The plasma antenna technology is licensed to SmartBand by plaintiff, as the inventor and patent holder, and by others under similar licensing agreements. There are also claims, counter-claims for damages alleged to arise out of breaches of fiduciary obligations of the principals arising out of their status as officers, directors and shareholders of SmartBand and third-party claims against Haleakala Research and Development, In ( hereinafter Haleakala )for tortious interference with contractual rights and expectations of the defendants. Haleakala is a Massachusetts corporation wholly owned by plaintiff Anderson which also pursues opportunities for research and development and, defendants contend, commercialization of the patented technology.

In the 15 months leading up to the "Anderson Resolutions' of September 2005, the defendants had raised $250,000 in start-up capital for SmartBand, the majority of which was paid to Anderson ; only a tiny fraction of that capital was paid to the defendants, in the form of reimbursement for travel expenses for directors and shareholders meetings. During that same period of time, critical steps toward commercialization were put into motion by the defendants, including meetings and agreements with strategic partners, potential equity investors, equity placement agents, technical advisors and contractors. This work generated thousands of pages of proprietary documents, including, for example, documentation and video-recording of technical demonstrations, multiple drafts and revisions of private equity placement memoranda and drafts of commercial agreements , including critical steps involving the parties: employment agreements, shareholder agreements, purchase agreements involving Haleakala.

The culmination of those steps, the release of an offering prospectus and solicitation for private equity which would fund the completion of prototype development and commercial product manufacture and sales, was thwarted by Anderson's vacillations, delays and refusals to participate in critical meetings. On September 6, 2005, Anderson's counsel communicated that ,at long last, Anderson had an employment agreement that he would sign, the last item to be completed. On September 13, Anderson reversed course once again, communicating by e-mail to the defendants that he would not sign the employment agreement. Since 'reversing course' on September 13, 2005, plaintiff Anderson has attempted to disavow prior agreements with the defendants and others regarding reallocation of share ownership, to nullify actions of the directors and shareholders, to seize control of the corporation, to terminate the technology licensing agreement between himself and SmartBand which represented the company's most valuable asset, and to promote Haleakala R&D, rather than SmartBand, as a vehicle for commercialization of the technology. The proprietary information described above has been provided to counsel for the plaintiff, who also represents Haleakala, in reliance upon assurances that an appropriate protective order would be put in place.

The unrestricted use and distribution of this information would be very detrimental to the viability of SmartBand and those individuals who have invested a quarter million dollars in anticipation of acquiring equity in a company poised to exploit leading-edge technology in the communications industry. Because of Theodore Anderson's status as inventor, officer, director and shareholder of SmartBand, some of the proprietary information that has been produced in response to plaintiff's subpoenas and discovery requests was already in the possession of or available to plaintiff Anderson, and Anderson had executed a non–disclosure agreement with SmartBand that applied to some but not all of the documents. Third-party defendant Haleakala Research and Development, Inc., represented by the same counsel as plaintiff, is not subject to that non-disclosure agreement or other restriction on use or disclosure of proprietary information. Plaintiff Anderson contends that he effectively terminated the License Agreement between himself and SmartBand regarding the patented technology in September 2005 and that, since that time, actively pursued initial steps toward commercialization of the technology via his personal corporation, Haleakala. As a result, Haleakala is now positioned to be directly competitive with SmartBand.

FRCP Rule 26(c) provides the inherent power of the Court to impose, modify and enforce protective orders, including protective orders arising from agreements by the parties. *United Nuclear Corp. v. Cranford Ins. Co*., 905 F.2d 1424, 1427 (10th Cir. 1990), cert. denied sub nom, *American Special Risk Ins. Co. v. Rohm & Haas Co*., 498 U.S. 1073, 111 S. Ct. 799, 112 L. Ed. 2d 860 (1991); *Smithkline Beecham Corp. v. Synthon Pharms.,* Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002). This includes agreements intended by the parties to protect documents and disclosure that they in good faith believe contain trade secrets or other confidential research, development or commercial information, FRCP Rule 26(c)(7), and such protections may extend to documents and information produced by non-parties pursuant to subpoenas, even subpoenas issued in other judicial

districts. *SmithKline, supra*; *Factory Mut. Ins. Co. v. Insteel Indus.*, 212 F.R.D. 301, 304 (M. D.N.C. 2002).

As noted above, documents and electronic files have been produced and information has been disclosed and discussed in depositions that are clearly proprietary in nature in good faith reliance on an agreement that such information would be protected by a protective order. The current impasse between counsel does not change the character of those documents and files nor the need to protect that information from unrestricted disclosure and re-use , especially by competitors of SmartBand and especially when those documents represent, in part, the commercial assets and work–product of SmartBand and the defendants as its managing officers .

WHEREFORE, Defendants / Third Party Plaintiffs Dobson, Soderquist, Middleton and Ackerman, ( "defendants") through counsel, having demonstrated good cause why such order should issue, respectfully request that a Protective Order be issued pursuant to Rules 26 (c) and 45 (c) of the Federal Rules of Civil Procedure with respect to documents and information produced or disclosed in connection with discovery in this matter, including but not limited to written discovery requests exchanged by the parties and subpoenas issued by counsel for parties to the case and directed to non-party persons and entities, substantially conforming to the provisions of a previously circulated draft Protective Order, attached hereto as **Exhibit 7**.

This the 9th day of October, 2006

R&S 505408-1

ROBERTS & STEVENS, P.A.


s/ Mark C. Kurdys
MARK C. KURDYS
N.C. Bar No. 13374
Attorney for Defendants and
 Third-Party Plaintiffs
P. O. Box 7647
Asheville, NC 28802
Phone: (828) 252-6600
Facsimile: (828) 253-7200
E-Mail: mkurdys@roberts-stevens.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served **Defendants' Second Motion for Protective Order** in the above entitled action upon all parties to this cause via e-mail properly addressed as set forth below.

> Albert L. Sneed, Jr., Esq.
> asneed@vwlawfirm.com
> VAN WINKLE, BUCK, WALL,
> STARNES & DAVIS
> P.O. Box 7376
> Asheville, NC 28802-7376
> *Attorneys for Plaintiff*
>
> Jed L. Babbin, Esq.
> jedbabbin@aol.com
> Sharon L. Babbin, Esq.
> slbabbin@aol.com
> 12855 Taylors Valley Lane
> Lovettsville, VA 20180
> *Attorneys for Plaintiff*

This the 9th day of October, 2006.

> ROBERTS & STEVENS, P.A.
>
> s/ Mark C. Kurdys
> MARK C. KURDYS
> N.C. Bar No. 13374
> Attorney for Defendants and
>  Third-Party Plaintiffs
> P. O. Box 7647
> Asheville, NC 28802
> Phone: (828) 252-6600
> Facsimile: (828) 253-7200
> E-Mail: mkurdys@roberts-stevens.com