**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL NO. 1:06CV2**

| | |
|---|---|
| **THEODORE R. ANDERSON,** )  | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **Vs.** ) | |
| ) | |
| **JEFFREY R. DOBSON; GERALD** ) | |
| **W. SODERQUIST; ROBERT W.** ) | |
| **MIDDLETON; and ARTHUR D.** ) | |
| **ACKERMAN,** ) | |
| ) | |
| **Defendants and Third-Party** ) | |
| **Plaintiffs,** ) | |
| ) | |
| **Vs.** )   **MEMORANDUM AND** | |
| )     **O R D E R** | |
| **HALEAKALA RESEARCH AND** ) | |
| **DEVELOPMENT, INC.,** ) | |
| ) | |
| **Third-Party Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the numerous objections to the

Magistrate Judge's Memorandum and Recommendation filed pursuant to

28 U.S.C. § 636(b)(1) by both Plaintiff Theodore Anderson and Third-Party

Defendant Haleakala Research and Development, Inc. ("Haleakala"), and

by Defendants/Third-Party Plaintiffs Jeffrey Dobson, Gerald Soderquist,

Robert Middleton, and Arthur Ackerman (collectively "Defendants" or

"Third-Party Plaintiffs").

## I.  BACKGROUND

This case has been the subject of one previous Order from this Court

which adequately summarizes the factual scenario of the present dispute.

*See* **Memorandum and Order, filed May 22, 2006, at 2-11.**  Furthermore,

the Magistrate Judge has incorporated this Court's previous factual

summary in the Memorandum and Recommendation presently before the

Court.  *See* **Memorandum and Recommendation, filed March 22, 2007,**

**at 5-10.**  Accordingly, this Court hereby incorporates by reference these

previous factual descriptions and will recite only the facts necessary for

resolution of the matters currently before the Court.

Plaintiff Theodore Anderson is a scientist, engineer, and inventor

who, pertinent to the present case, holds multiple patents for inventions in

the field of plasma antenna technology.  **Memorandum and Order,** *supra***,**

**at 2.**  Plaintiff is also the sole director and officer of Third-Party Defendant

Haleakala.  *Id.* **at 2-3.**  Plaintiff sought to commercialize his patented

technology, and was referred to Defendants for assistance in pursuing this

enterprise.  *Id.* **at 2.**  Plaintiff and Defendants together formed SmartBand

Technologies, Incorporated ("SmartBand") in June 2004.  *Id.* **at 3.**  Plaintiff

was given the vast majority of shares of the corporation in the original

stock dispersion, while Defendants received a much smaller percentage of

shares.  *Id.* **at 4.**  Plaintiff and Defendants also formed the SmartBand

Board of Directors, and certain individuals were appointed as officers of the

corporation:  Defendant Dobson was made President and CEO; Plaintiff

was made Vice President; and Defendant Soderquist was made Secretary.

*Id.*

    As previously noted, in August 2004 the parties' interpretation of the

facts begins to diverge.  *Id.* **at 6.**  Plaintiff believes Defendants were

attempting to take control of SmartBand from him, while Defendants

believe Plaintiff abandoned his duties to SmartBand and focused solely on

the development of his other company, Haleakala.  *Id.*  The parties

continued to negotiate and attempt the development of SmartBand until

September 19, 2005, when Plaintiff, acting as majority shareholder,

removed each of the Defendants from their positions as directors and

officers of SmartBand (hereinafter "the Anderson Resolutions").  *Id.* **at 7.**

Defendants, however, assert that at SmartBand's annual shareholders and

directors meeting on August 17, 2005, Plaintiff's majority shareholder position was eliminated. *Id.* **at 7-8.** At this meeting, Defendants claim the directors of SmartBand unanimously approved a stock dispersion to Defendants, among other individuals, which effectively reduced Plaintiff's percentage of shares held in SmartBand below the amount required for a majority. *Id.* Therefore, Defendants allege the Anderson Resolutions were not effective when issued because Plaintiff no longer had the authority to issue such resolutions as the majority shareholder of SmartBand. *Id.* Plaintiff, on the other hand, denies the alleged unanimous stock dispersion which Defendants claim occurred. *Id.* **at 8.** Because of this dispute over who has the authority to control the company, Defendants have not relinquished control of SmartBand after the Anderson Resolutions. *Id.* **at 7.** Plaintiff thereafter filed suit against Defendants for numerous claims, and Defendants asserted counterclaims and third-party complaints against Plaintiff and Haleakala, respectively. *See id.* **at 8-10.**

Since this Court's last Order, the parties to the present dispute have completed discovery[1] and made numerous dispositive motions which were

---

[1] Per the Magistrate Judge's most recent Memorandum and Recommendation, the discovery deadline has been extended for Defendants to complete their deposition of Richard Weinstein.

submitted to the Magistrate Judge for review. The Magistrate Judge's

recent Memorandum and Recommendation addressed, in pertinent part,

Haleakala's motion to dismiss for lack of personal jurisdiction; Plaintiff's

and Haleakala's joint motion for partial summary judgment as to Counts I,

II and IV of the complaint;[2] and Plaintiff's and Haleakala's joint motion for

summary judgment as to Defendants' counterclaim and third-party

complaint. **Memorandum and Recommendation, at 1-2.** The Magistrate

Judge recommended this Court deny Haleakala's motion to dismiss; grant

Plaintiff's and Haleakala's joint motion for partial summary judgment as to

Count I, deny the motion as to Counts II and IV and dismiss such Counts;

and grant Plaintiff's and Haleakala's joint motion for summary judgment as

to Defendants' counterclaim and third party complaint. *Id.* **at 33, 48-49.** All

parties have submitted objections to these specific parts of the

Recommendation, with the exception of the Recommendation regarding

Count IV of Plaintiff's complaint and certain claims in Defendants'

---

**Memorandum and Recommendation, filed March 22, 2007, at 49.**
However, with this sole exception, discovery has been completed.

[2] Court III of the complaint alleges a claim for unfair and deceptive
trade practices. The motion for summary judgment did not address this
claim.

counterclaim and third-party complaint.  **Plaintiff and Third-Party Defendant's Objections to the Memorandum and Recommendation Order, filed April 5, 2007; Defendants/Third Party Plaintiffs' Objections to Magistrate's Recommendations, filed April 5, 2007.**  The Court has reviewed the Memorandum and Recommendation, as well as the parties' respective objections, and the matter is now ripe for ruling.

## II.  STANDARD

### A.    Objections to Magistrate Judge's Recommendations

A party may file written objections to a magistrate judge's memorandum and recommendation within ten days after being served with a copy thereof.  **28 U.S.C. § 636(b)(1).**  "Any written objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections."  **Thomas v. Westinghouse Savannah River Co.**, 21 F.Supp.2d 551, 560 (D.S.C. 1997); **see also, Battle v. United States Parole Comm'n**, 834 F.2d 419, 421 (5th Cir. 1987) ("Parties filing objections must specifically identify those findings objected to.").**  "Frivolous, conclusive or general objections need not be considered by the district court."  **Battle**, 834 F.2d

**at 421.** "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, **327 F.Supp.2d 743, 747 (E.D. Mich. 2004);** *see also Jones v. Hamidullah*, **2005 WL 3298966, at \*3 (D.S.C. 2005) (noting a petitioner's objections to a magistrate's report were "on the whole without merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report].").** General or conclusive objections result not only in the loss of *de novo* review by the district court, but also in waiver of appellate review. *Tyler v. Beinor*, **81 F. App'x 445, 446 (4ᵗʰ Cir. 2003);** *United States v. Woods*, **64 F. App'x 398, 399 (4ᵗʰ Cir. 2003).** If proper objections are made, a district court will review the objections under a *de novo* standard. **28 U.S.C. § 636(b)(1).** Where no objection is made, however, the Court need "'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, **416**

**F.3d 310, 315 (4th Cir. 2005)**, *cert. denied*, **126 S. Ct. 1033 (2006)**

**(quoting Fed. R. Civ. P. 72, Advisory Committee note).**

**B.      Summary Judgment**

A motion for summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c).** "Summary judgment is proper 'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" ***Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).** "In considering a motion for summary judgment, under Federal Rule of Civil Procedure 56(c), a court must provide 'adequate time for discovery' to a party that has failed to show the existence of a genuine issue of material fact before granting the motion." ***Worm v. American Cyanamid Co.*, 5 F.3d 744, 749 (4th Cir. 1993) (quoting *Celotex Corp. v.***

***Catrett*, 477 U.S. 317, 322-23 (1986)).**  A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleading[s], but [must] . . ., by affidavits or as otherwise provided in [Rule 56], . . . set forth specific facts showing that there is a genuine issue for trial."  **Fed. R. Civ. P. 56(e).**  Said another way, the nonmoving party "'cannot create a genuine issue of fact through mere speculation or the building of one inference upon another.'"  ***Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995) (citing *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).**  Furthermore, "the 'mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  ***Id.* (citing *Anderson, supra*, at 244).**  Finally, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).**

### III.  ANALYSIS

In addition to the motions stated above, the Court will also address Plaintiff's and Haleakala's Motion to Strike Video Deposition, filed January 5, 2007.

To begin, the Court notes that no party has filed objections with respect to the Magistrate Judge's recommendation to deny Plaintiff's and Haleakala's motion for summary judgment as to Count IV of the complaint. *Id.* **at 35-38.**  Nor has any party objected to the recommendation to deny as moot Plaintiff's and Haleakala's motion to strike the video deposition of Richard Weinstein.  *Id.* **at 47-48.**  Accordingly, because no objections were made as to these recommendations, this Court need only determine if there is clear error on the face of the record to accept the recommendations.  ***See Diamond*, *supra*, at 315.**  After a thorough review of the record, it is clear to the undersigned that the Magistrate Judge's recommendation to deny summary judgment on Count IV of the complaint is supported and warranted by the record, and the Court hereby adopts that recommendation and dismisses the cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6).  As to the motion to strike the video deposition of Richard Weinstein, the Magistrate Judge deferred a

ruling to this Court, but recommended the motion be denied as moot.

**Memorandum and Recommendation,** *supra*, **at 47-48.**  Plaintiff and

Haleakala's argument against the video deposition rests upon an

interpretation of Federal Rule of Civil Procedure 28, which, for purposes of

the present motion, prohibits the taking of a deposition before the attorney

or counsel of any of the parties.  **Fed. R. Civ. P. 28(c).**  Plaintiff and

Haleakala rely upon a *per se* argument, asserting that because one of

Defendants' attorneys operated the video camera during the deposition

and did not specifically assure the quality of the recording, Rule 28 was

violated and thus the deposition should be stricken.  However, the use of a

party attorney to record a deposition is not a *per se* violation of the Rules.

> While counsel's operation of the video camera is not the
> preferred method of conducting a video deposition, the court
> agrees with those courts that have concluded that neither Rule
> 28(a) nor Rule 28(c) specifically prohibit a party's attorney from
> operating the video camera during the course of a video
> deposition otherwise conducted in compliance with Rule 30.
> . . .
> Consequently, in the absence of any indication of irregularities
> in the video recording process, the court concludes that the
> mere fact that Plaintiff's counsel operated the video camera
> during the course of the subject depositions fails to provide a
> basis for the relief requested.

*Ott v. Stipe Law Firm*, **169 F.R.D. 380, 381-82 (E.D. Okla. 1996).**

Therefore, because Plaintiff and Haleakala have failed to provide "any

indication of irregularities in the video recording process," the undersigned will deny the motion to strike the video deposition of Richard Weinstein without prejudice. *Id.*

## A.     Count I of Plaintiff's Complaint

Defendants contend the Magistrate Judge "has misapprehended and misapplied Delaware law"[3] in recommending a grant of summary judgment as to Count I of the complaint and object to such recommendation. **Defendants' Objections, at 2.** Because Defendants' objections are specific and properly made, this Court will conduct a *de novo* review of this recommendation. **28 U.S.C. § 636(b)(1).**

Count I of the complaint seeks declaratory and injunctive relief as to the validity of the "Anderson Resolutions" which removed Defendants from their positions as directors and officers of SmartBand. Specifically, Plaintiff asks the Court to

_____

[3] All parties, as well as the Magistrate Judge and this Court, agree that Delaware law controls the present dispute. ***See* Plaintiff and Haleakala's Memorandum in Support of Partial Summary Judgment, filed August 25, 2006, at 10; Defendants' Memorandum Opposing Partial Summary Judgment, filed September 27, 2006, at 3.**

> 1) declar[e] that the Anderson Resolutions were a valid and lawful exercise of Plaintiff's rights as majority stockholder of SmartBand and subsequently as sole remaining director of SmartBand, and that, pursuant to the Anderson Resolutions, Defendants, as of September 19, 2005, were and are no longer directors, officers, employees or consultants of SmartBand; 2) enjoin[ ] Defendants from taking any further actions with respect to or on behalf of SmartBand, or representing themselves as directors, officers, employees or consultants of SmartBand; 3) enjoin[ ] Defendants from interfering with Plaintiff's grant applications, other business relationships, or any other use of the Patents; and 4) direct[ ] Defendants to turn over to Plaintiff all of SmartBand's books, records, accounts, intellectual property rights, and all other assets of any and every kind.

**Complaint, ¶ 18.**  Despite the parties' strong contentions regarding the obvious factual disputes in this case, the Magistrate Judge found as a matter of law that the Anderson Resolutions were valid because at the time they were issued, Plaintiff was the majority shareholder and sole director of SmartBand, and thus had the authority to remove Defendants from their positions in the company.  **Memorandum and Recommendation, *supra*, at 32.**  The Magistrate Judge based this recommendation on his interpretation and application of Delaware law to the present situation. Under his view, Defendants failed to comply with Delaware law when they did not create a written instrument evidencing the issuance of additional shares of a corporation at the August 17 annual meeting, which

purportedly removed Plaintiff as the majority shareholder of the company.

*Id.* **at 27-30.** Defendants' current objections rely on a different interpretation of Delaware law that in the absence of a written instrument evidencing the issuance of company's stock, a court is to look to extrinsic evidence to determine if the stock was validly issued. Under this interpretation, Defendants assert the factual disputes in this case are material to resolution of Count I and summary judgment must be denied.

After a review of Delaware's statutes and case law concerning this issue, it is clear to the undersigned that the Magistrate Judge's interpretation and recommendation as to Count I of Plaintiff's complaint is correct. As a starting point, the Court looks to Delaware's pertinent corporate statutory scheme regarding corporate stock. **8 Del. C. §§ 151-174, 211-233.**

> Subject to any provisions in the certificate of incorporation, every corporation may create and issue . . . rights or options entitling the holders thereof to acquire from the corporation any shares of its capital stock of any class or classes, *such rights or options to be evidenced by or in such instrument or instruments as shall be approved by the board of directors.*

**8 Del. C. § 157(a) (emphasis added).** Furthermore, the directors of a corporation are authorized to issue any additional stock of the corporation not already issued or subscribed to, and the corporation is required to

maintain a current stock ledger "as the only evidence as to who are the stockholders entitled . . . to [inspect the corporate books] or to vote in person or by proxy at any meeting of stockholders." **8 Del. C. §§ 161, 219.**

In 2002, the Delaware Supreme Court specifically addressed Delaware's statutory scheme concerning the issuance of corporate stock.

> As this Court has stated in requiring strict adherence to statutory formality in matters relating to the issuance of capital stock, the "issuance of corporate stock is an act of fundamental legal significance having a direct bearing upon questions of corporate governance, control and the capital structure of the enterprise. The law properly requires certainty in such matters." Delaware's statutory structure implements these policies through a "clear and easily followed legal roadmap" of statutory provisions. *This statutory scheme consistently requires board approval and a writing.*

*Grimes v. Alteon, Inc.*, **804 A.2d 256, 260 (Del. 2002) (quoting *STAAR Surgical Co. v. Waggoner*, 588 A.2d 1130, 1136 (Del. 1991) and *Kalageorgi v. Victor Kamkin, Inc.*, 750 A.2d 531, 538 ( Del. 1999))** **(footnotes omitted) (emphasis added).** Speaking on the policy concerns driving this statutory scheme, the *Grimes* court continued to explain,

> The statutes relating to the issuance of stock that provide the policy context that is relevant here are 8 Del. C. §§ 151, 152, 153, 157, 161 and 166. Taken together, these provisions confirm the board's exclusive authority to issue stock and regulate a corporation's capital structure. To ensure certainty, these provisions contemplate board approval and a written instrument evidencing the relevant transactions affecting

> issuance of stock and the corporation's capital structure. . . .
> *Section 157, relating to rights and options respecting stock,*
> *requires board approval and a written instrument to create such*
> *rights or options.*

*Id.* **at 260-61 (emphasis added); *see also Patriot Scientific Corp. v.***

***Korodi*, 2007 WL 1558510, at \*3-4 (S.D. Cal. 2007) (noting the**

**requirement of a writing and stating, "*Grimes* . . . [is] controlling**

**authority . . . .").**  Therefore, it is abundantly clear that under Delaware

law, a writing is required for the issuance of corporate stock to be deemed

valid.  Without such writing, any shares alleged to have been issued are

considered invalid.

However, in an abundance of caution, this Court will entertain

Defendants' argument that the Court should consider extrinsic evidence to

determine who are the shareholders of a corporation.  The above

mentioned writing requirement can presumably be satisfied through the

maintenance of a corporation's stock ledger, as required by Delaware

statutory law, or by some other clear and unambiguous writing.  ***See* 8 Del.**

**C. § 219.**  In the absence of a stock ledger, however, the Delaware

Supreme Court has held it is appropriate for a trial court to consider

extrinsic evidence to determine who is a shareholder of the corporation's

stock.  ***See Rainbow Nav., Inc. v. Pan Ocean Nav., Inc.*, 535 A.2d 1357,**

**1359 (Del. 1987) ("We now hold that when the stock ledger is blank or non-existent, the Court of Chancery has the power to consider other evidence to ascertain and establish stockholder status.").**

Viewing the facts and pleadings in the light most favorable to Defendants, the Court finds that the Defendants, as directors and officers of SmartBand, have failed to comply with Delaware law in the alleged issuing of these shares of stock of SmartBand. Defendants failed to create a written instrument as evidence of the validly issued stock which supposedly removed Plaintiff as majority shareholder of SmartBand, as required by Delaware law. **See *Grimes*, *supra*.** Even viewing the facts liberally, the only possible "written instrument" evidencing the issuance of these shares are the corporate minutes written by Defendant Soderquist for the August 17, 2005, meeting at which the shares were purportedly issued.[4] However, assuming these minutes were in fact genuine, they are

---

[4] Another possible "written instrument" evidencing the dispersion of these alleged shares of stock are the stock certificates eventually issued to Defendants. However, as discussed below, it is abundantly clear to the undersigned that such certificates were not created until after Plaintiff issued the Anderson Resolutions, and thus their existence warrants no further attention from this Court. **Exhibit 7, Deposition of Gerald W. Soderquist, *attached to* Plaintiff and Third-Party Defendant's Memorandum in Support of Partial Summary Judgment, *supra*, at 37.**

so ambiguous as to the issuance of these particular shares that they cannot qualify as a written instrument evidencing the issuance of these shares.  As to this issue, the minutes state:

> The Allocation of Shares was discussed along with a slide presentation by the Chairman.  It was noted that the allocation as presented, which involves the granting of additional shares to Shareholders Dobson, Middleton, Soderquist, Ackermann, and Yelton, as well as adjustments to existing option holders, must take place prior to the release of the PRIVATE PLACEMENT MEMORANDUM . . . .
>
> . . .
>
> The Shareholders unanimously agreed to the issuance of additional shares as required for the Private Placement Offering and consistent with the above Allocation of Shares as presented by the Chairman.

**Exhibit 1, Minutes – Annual Meeting of Directors, *attached to* Defendants' Answer to Complaint, filed February 21, 2006, at 3-4.**

These minutes omit crucial details such as who received the shares and how many shares were distributed to each individual.  Such an ambiguous record cannot be accepted as a writing sufficient to satisfy the requirements for dispersion of stock outlined by Delaware law.  Accordingly, this Court agrees with the Magistrate Judge in finding that, as a matter of law, the shares claimed to have been issued to Defendants at SmartBand's annual director's meeting on August 17, 2005, were not

validly issued under Delaware law due to the lack of a written instrument evidencing the transaction.

In further contradiction with Delaware law, Defendants also failed to maintain a stock ledger to record who the shareholders of SmartBand were. **8 Del. C. § 219.** Delaware Supreme Court precedent states in the absence of a stock ledger, a trial court is to consider extrinsic evidence to determine who the shareholders are. ***Rainbow Nav., Inc., supra.*** Here, this Court has looked to such extrinsic evidence as the depositions of Defendants and, most compelling, the e-mail communications sent between Defendants after they were notified by Plaintiff of their removal from SmartBand. At their respective depositions, Defendants Dobson and Soderquist, who were the primary individuals charged with issuing stock for SmartBand, could not remember exactly when the stock certificates were prepared or issued. ***See* Exhibit 1, Deposition of Jeff Dobson, *attached to* Plaintiff and Third-Party Defendant's Memorandum in Support of Partial Summary Judgment, *supra*, at 156, 159-60; Soderquist Deposition, *supra*, at 42.** Specifically, Defendant Dobson believes the shares of stock that would presumably remove Plaintiff as majority shareholder of SmartBand were not issued until after September 19, when

the Anderson Resolutions were issued.  **Dobson Deposition,** *supra***, at**

**161.**  Further, in response to questions regarding the backdating of the

shares of stock, Defendant Dobson simply deferred his opinion on the

legality of the matter and reasons for doing so to his corporate counsel.  *Id.*

**at 154.**  Defendant Soderquist, on the other hand, testified at his

deposition that he had no explanation for why the shares of stock were

dated September 14, rather than the date they were presumably issued as

currently alleged by Defendants (August 17), or when they were actually

prepared (sometime after or including September 20).  **Soderquist**

**Deposition,** *supra***, at 42.**  In other words, it appears that the two

Defendants charged with the creation and maintenance of stock to

SmartBand have no recollection as to when the shares were actually

issued or why certain dates were written on the stock certificates.  Most

importantly, these two Defendants have given no deposition testimony as

to the notion that these shares were actually issued before the Anderson

Resolutions on September 19, 2006.

In addition to the deposition testimony of key Defendants, the Court

has reviewed the e-mail correspondence sent between Defendants on the

day after Plaintiff issued his resolutions removing them from their positions

with SmartBand.  Like the relevant deposition testimony, these e-mails also do not provide a basis for this Court to hold that Defendants are shareholders of SmartBand to the extent they claim to be.  These e-mails, which curiously contain much more specific information about the alleged approved stock dispersion on August 17, 2005, than the recorded minutes of that meeting, reflect Defendants' apparently confused and rushed state to prepare these stock certificates.  ***See, e.g.,* Exhibits 3 and 4, E-mails of Jeff Dobson, *attached to* Plaintiff and Third-Party Defendant's Memorandum in Support of Partial Summary Judgment, *supra* (describing the alleged stock distribution from the August 17 annual meeting and requesting preparation of stock certificates).**  These e-mails do not reflect the carrying out of what was allegedly previously accomplished.  Instead, they reflect that, on September 20, 2005, one day after Plaintiff removed Defendants from their respective positions with SmartBand, Defendants had no knowledge regarding the date these shares were actually issued and became effective.  ***Compare id.* at Exhibit 4 *with id.* at Exhibit 5 (Defendant Dobson changing his proposal for the stock effectiveness date).**  If anything, these e-mails reflect Defendants' attempt to conjure an official issuing date for the

alleged issued shares of stock out of thin air. Ignoring the suspicious time-related context and content of these e-mails, the Court cannot hold that the e-mail communications between Defendants after the Anderson Resolutions were issued reflect substantial evidence to demonstrate that, as of September 19, 2005, Defendants were stockholders in SmartBand to the extent alleged. Nor do these e-mails demonstrate that Plaintiff had lost his position as majority shareholder of SmartBand prior to September 19. Upon reviewing the extrinsic evidence of record to determine who was a shareholder and to what extent on the day in question, as required by Delaware precedent, this Court finds Defendants have failed to establish their alleged holding in SmartBand, and the shares which Defendants claim to have been issued prior to September 19, 2005, were, as a matter of law, never issued before that date.

Accordingly, this Court holds that a written instrument was not created evidencing the issuance of Defendants' alleged shares of stock in SmartBand, as required by Delaware law. Furthermore, Defendants have provided the Court with no extrinsic evidence which demonstrates that these alleged shares were actually issued prior to September 19, 2005.

Therefore, this Court holds, as a matter of law, that the Anderson Resolutions were a valid and lawful exercise of Plaintiff's rights as a majority stockholder of SmartBand and subsequently as the sole remaining director of SmartBand. The Court further finds that, pursuant to the Anderson Resolutions, the Defendants were no longer directors, officers, employees, or consultants of SmartBand as of September 19, 2005. The Defendants will be permanently enjoined from taking further actions with respect to or on behalf of SmartBand, or representing themselves as directors, officers, employees, or consultants, as well as be permanently enjoined from interfering with Plaintiff's grant applications, other business relationships, or any other use of the patents herein. The Defendants will also be directed to relinquish to Plaintiff all SmartBand books, records, accounts, intellectual property rights, and all other remaining assets of any kind. Thus, Plaintiff's motion for summary judgment as to Count I of his complaint seeking declaratory and injunctive relief shall be granted and a declaratory judgment is filed herewith.

## B.    Count II of Plaintiff's Complaint

Plaintiff objects to the Magistrate Judge's recommendation that summary judgment be denied as to Count II of Plaintiff's complaint, which alleges Defendants breached fiduciary duties as directors and officers of SmartBand owed to Plaintiff as the majority shareholder.[5] **Plaintiff's Objections, *supra*, at 1-6; Complaint, *supra*, at 11.**  Despite the broad pleadings contained in his complaint, Plaintiff narrowly focuses his motion for summary judgment as to Count II on Defendants' alleged act of backdating stock to SmartBand after Plaintiff removed Defendants from their respective positions as directors and officers of SmartBand. **Plaintiff's Motion for Partial Summary Judgment, filed August 25, 2006, at 15-18.**  Based upon these facts, Plaintiff argues Defendants breached their fiduciary duties to SmartBand in an attempt to "usurp voting control of SmartBand and to wrest control of SmartBank [sic] from Plaintiff." ***Id.* at 15.**  The Magistrate Judge, however, found that if summary judgment is granted as to Count I of the complaint, Count II fails as a matter of law

---

[5] The Magistrate Judge did recommend this claim be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  The Plaintiff did not specifically object to this recommendation.  ***See* Memorandum and Recommendation, at 35.**

because the Anderson Resolutions removed Defendants from their respective positions with SmartBand and, therefore, Defendants did not owe any fiduciary duties to the company after their termination. **Memorandum and Recommendation,** *supra*, **at 34-35.** Accordingly, the Magistrate Judge recommended summary judgment be denied as to Count II and the claim dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* Plaintiff objected to this finding and argues his claim should be granted summary judgment or allowed to proceed to trial based on the notion that, while Defendants may not have been *de jure* officers and directors of SmartBand with fiduciary duties owed to the company, Defendants were nevertheless *de facto* officers and directors of SmartBand because they have not relinquished control of the company since their removal as employees of the company. **Plaintiff's Objections,** *supra*, **at 6.** Plaintiff also objected to the Magistrate Judge's dismissal of the entire claim for breach of fiduciary duties, arguing the complaint alleges breaches by Defendants both before and after the Anderson Resolutions removed Defendants from SmartBand. *Id.* **at 2.**

Delaware law defines a *de facto* officer as "one who actually assumes possession of an office under the claim and color of an election

or appointment and who is actually discharging the duties of that office, but for some legal reason lacks *de jure* legal title to that office." ***In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 48 (Del. 2006) (footnote omitted).** Generally speaking, "[d]e facto directors or officers have the same fiduciary duties as de jure ones . . . ." **18B Am. Jur. 2d *Corporations* § 1229 (2007).** Because Delaware law recognizes the existence of *de facto* officers and directors, such as Defendants in the present case, and thus imposes fiduciary duties on them in the same manner as *de jure* officers and directors, the undersigned cannot agree with the Magistrate Judge's reasoning for denying summary judgment and dismissing Plaintiff's claim as to Count II. ***See In re Walt Disney* Co., *supra*.**

However, the undersigned finds for other reasons that summary judgment is inappropriate for this claim, and that the claim should be dismissed for failure to state a claim. To begin, for Plaintiff to succeed on a claim of breach of fiduciary duty, Plaintiff must demonstrate "(1) that a fiduciary duty exists and (2) that the fiduciary breached that duty." ***York Lingings v. Roach*, 1999 WL 608850, \*2 (Del. Ch. 1999).** Furthermore, decisions and actions by a director or officer of a corporation are protected

by the business judgment rule, which is "'a presumption that in making a
business decision, the directors of a corporation acted on an informed
basis [i.e., with due care], in good faith and in honest belief that the action
taken was in the best interest of the company.'" ***Citron v. Fairchild
Camera and Instrument Corp.***, 569 A.2d 53, 64 (Del. 1989) (citing
***Allaun v. Consolidated Oil Co.***, 147 A. 257, 261 (Del. Ch. 1929)).
Accordingly, to prove a breach of fiduciary duties, the proponent of such a
claim must rebut this presumption by introducing evidence of self-interest
or failure to exercise due care. ***Id.***

Contrary to the Magistrate Judge's findings, this Court believes a
fiduciary duty was imposed on Defendants as *de facto* officers of
SmartBand when they refused to relinquish control of the corporation.
However, because this Court has declared in the previous section that the
alleged stock issued by Defendants after the Anderson Resolutions was
invalid, and thus never occurred, Plaintiff cannot establish the second
element to his claim of breach of fiduciary duties. In other words, Plaintiff
has successfully demonstrated that Defendants never issued stock in the
manner they attempted to after the Anderson Resolutions. Therefore,
Plaintiff is now without factual grounds to assert a claim of breach of

fiduciary duties regarding the alleged backdating of stock because, as the Court found in the previous section, the alleged backdating never happened or was effective.  Accordingly, this portion of Plaintiff's claim for breach of fiduciary duties is now moot, and summary judgment shall be denied.

As stated above, Plaintiff cites only the alleged backdating of stock in his motion for summary judgment as to Count II, but argues in his objections that the Magistrate Judge failed to consider the broad allegations set forth in his complaint in denying summary judgment and dismissing his claim despite his failure to present any evidence in his motion to support these broad allegations.  Such an objection need not be considered by the Court because Plaintiff has essentially abandoned the issues raised in Count II of his complaint that were not raised in his motion for summary judgment on Count II.  ***See Edward B. Marks Music Corp. v. Continental Record Co.***, 222 F.2d 488, 492 (2d Cir. 1955) ("**It is thus apparent that the plaintiff was content to submit on the question of law which we have decided adversely to its contentions, and that the formal issue in the pleadings . . . was merely a sham issue which should not be allowed to frustrate the beneficent objectives of Rule**

**56 . . . .  The Rule was designed to enable the trial judge, by piercing formal verbiage, to filter out of the pleadings sham issues which might otherwise cause needless and time-consuming litigation.")**

Even were the Court to entertain Plaintiff's unaddressed allegations in Count II of his complaint, it is clear the business judgment rule protects Defendants' actions cited by Plaintiff, and further that Plaintiff's conspiracy theories have failed to rebut the presumption that Defendants acted in good faith.  Accordingly, the Court shall deny Plaintiff's motion for summary judgment as to Count II of his complaint, and the count is hereby dismissed from further litigation pursuant to Fed. R. Civ. P. 12(b)(6).

**C.  Defendants' and Third-Party Plaintiffs' Counterclaim and Third-Party Complaint**

Defendants specifically object to the recommendation to grant Plaintiff's and Haleakala's motion for summary judgment as to Defendants'/Third-Party Plaintiffs' counterclaim and third-party complaint for breach of fiduciary duty and inducement to breach fiduciary duties, respectively.[6]  **Defendants' Objections, *supra*, at 8-11.**  As there are no

---

[6] The Plaintiff objected to the Magistrate Judge's recommendation to deny his motion to dismiss for lack of *in personam* jurisdiction only in the

objections to the recommendation to grant Plaintiff's and Haleakala's

motion for summary judgment regarding Defendants'/Third-Party Plaintiffs'

claims of tortious interference of contract and unfair and deceptive trade

practices, the Court will only determine if there is clear error on the face of

the record before accepting the recommendations. ***See Diamond, supra,***

***at 315.*** After reviewing the record, this Court hereby adopts the Magistrate

Judge's recommendation to grant Plaintiff's and Haleakala's motion for

summary judgment as to Defendants'/Third-Party Plaintiffs' claims of

tortious interference of contract as well as unfair and deceptive trade

practices.

Addressing the Defendants' objections, Defendants' counterclaim

against Plaintiff asserts that, under North Carolina law, Plaintiff willfully

failed in carrying out his fiduciary duties owed to SmartBand and its

shareholders, including Defendants. **Answer, at 14.** Furthermore,

Defendants as Third-Party Plaintiffs assert that Haleakala, acting through

its only registered agent, Plaintiff, "encouraged, induced, and benefitted"

---

event that the undersigned disagreed with the recommendation to grant
summary judgment dismissing the counterclaim and third-party complaint.
Since the Court agrees with that recommendation, there is no need to
address those objections.

from Plaintiff's alleged breach of fiduciary duties. *Id*. **at 16.** The Magistrate Judge interpreted Defendants' claims against Plaintiff and Haleakala as stemming solely from Plaintiff's actions at SmartBand's August 17, 2005, annual meeting. **Recommendation,** *supra***, at 41-42.** With regard to this specific date, the Magistrate Judge found that Defendants were attempting to assert that Plaintiff was acting as Haleakala's agent at the August 17 meeting in defeating Haleakala's motion to dismiss for lack of personal jurisdiction, while also asserting Plaintiff was acting in his fiduciary role to SmartBand for purposes of defeating summary judgment. *Id.* **at 41-44.** Therefore, under the theory of judicial estoppel, Defendants could not claim that Plaintiff breached any fiduciary duties on August 17 because he was not acting as an employee of SmartBand, but rather as an agent of Haleakala, and thus owed no fiduciary duty to SmartBand or its shareholders. *Id.* Accordingly, the Magistrate Judge recommended Plaintiff's motion for summary judgment be granted as to Defendants' counterclaim for breach of fiduciary duty against him. *Id.* **at 44.** Because Defendants' claim against Haleakala for inducing Plaintiff's breach of fiduciary duties is a form of secondary liability which predicates on the Court's finding of Plaintiff's breach of fiduciary duty, the Magistrate Judge

also recommended granting Haleakala's motion for summary judgment regarding Defendants'/Third-Party Plaintiffs' claim. *Id.* **at 41, 44.**

Defendants object to these recommendations arguing the Magistrate Judge incorrectly narrowed his analysis of Defendants' claims to encompass only Plaintiff's actions during the August 17, 2005, meeting. **Defendants' objections,** *supra***, at 8.** Defendants assert their claim encompasses Plaintiff's alleged breach of fiduciary duties over a vast period of time and, therefore, summary judgment should be denied because there exist genuine issues of material fact to be resolved by this Court. *Id.* **at 8-11.** This Court cannot find in the record where Defendants' counterclaim or subsequent filings limit their allegations against Plaintiff only to his actions on August 17, 2005, during SmartBand's annual meeting and finds the Defendants' objections well taken. The Court will, therefore, independently review Plaintiff's and Haleakala's motions for summary judgment as to Defendants'/Third-Party Plaintiffs' claims of breach of fiduciary duty and inducing breach of fiduciary duty, respectively. On review of the pleadings submitted in regard to this issue, the Court finds Defendants have failed to defeat Plaintiff's sufficiently plead motion for summary judgment. Because Defendants'/Third-Party Plaintiffs' claim

against Haleakala predicates on a finding of Plaintiff's breach of fiduciary duties, the third-party claim against Haleakala must also fail. However, even if this Court considered the merits of Defendants/Third-Party Plaintiffs' claim against Haleakala for inducing Plaintiff's alleged breach of fiduciary duty, the Court would again reach the conclusion that this claim must also fail.

In his motion for summary judgment, Plaintiff has sufficiently demonstrated that Defendants' counterclaim is unsupported by the evidence on the record. **Plaintiff and Third-Party Defendant's Memorandum in Support of Summary Judgment, filed December 27, 2006, at 18-24;** *see also Res. Bankshares Corp.*, *supra*, **at 635 ("Summary judgment is proper 'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").** Haleakala, on the other hand, asserts the third-party claim must also fail both procedurally and substantively. As stated above and in Haleakala's brief, the third-party complaint predicates on a finding of Plaintiff's breach of fiduciary duty; if Plaintiff has not committed a breach, Haleakala cannot be liable for

inducing a non-breach. *Id.* **at 14-15.** Looking to the merits of this claim,

Haleakala asserts that Defendants' pleadings alleging the breach of

fiduciary duty stems from Plaintiff's individual and independent actions

toward SmartBand, and are not sufficiently connected to Haleakala. *Id.* **at**

**15.** In reply to these well-plead arguments, Defendants ambiguously cite

deposition testimony and rely upon logical inferences which are attenuated

at best, to defeat summary judgment. **Defendants' Reply to Plaintiff's**

**and Haleakala's Motion for Summary Judgment, filed January 17,**

**2007, at 2-6.**[7] However, it is the view of this Court that Defendants'

arguments serving as a basis for their counterclaim are reduced to

disagreements with Plaintiff's business judgment, fueled by Defendants'

own conspiracy theory against Plaintiff, which is clearly protected by the

business judgment rule. ***Citron*, *supra*, at 64.** As noted above, the

business judgment rule presumptively attaches to "protect the directors

and the decisions they make" from personal liability, and thus it is

---

[7] Defendants claim, for example, that Plaintiff breached his fiduciary duties owed to SmartBand for "refus[ing] . . . to assent to a number of corporate agreements which he knew were pre-requisite to [SmartBand's] ability to seek funds for its operations . . . ." **Defendants' Reply to Plaintiff's and Haleakala's Motion for Summary Judgment,** *supra*, **at 2-3.**

Defendants' burden to rebut this presumption with evidence of self-interest or some other lack of good faith or failure to exercise due care, which they have failed to accomplish in the present case by relying upon speculation and inferences.  *Id.*  In a similar fashion, the only means used by Defendants to connect Haleakala to the asserted claim is, by Defendants' own admission, a logical inference that is speculative in nature.

**Defendants' Reply to Plaintiff's and Haleakala's Motion for Summary Judgment,** *supra***, at 5-6 (asserting Haleakala must therefore be encouraging Plaintiff's actions because it may have benefitted from Plaintiff's alleged breach of fiduciary duty).**  As the Fourth Circuit has made clear, a nonmoving party "'cannot create a genuine issue of fact through mere speculation or the building of one inference upon another.'"  ***Harleysville Mut. Ins. Co. v. Packer***, ***supra***, **at 1120.**  Accordingly, this Court finds Defendant has countered Plaintiff's and Haleakala's sufficiently plead motions for summary judgment as to Defendants' counterclaim and third-party complaint with mere speculation and inferences, and thus such motions will be granted.

**D.    Count III of Plaintiff's Complaint**

The only remaining claim is Count III of the complaint which alleges that the Defendants committed unfair and deceptive trade practices by (1) issuing shares of stock in the company to themselves; (2) engaging in acts which breached their fiduciary duties; (3) misrepresented the stock ownership of the company; (4) issued false minutes of the board of directors of SmartBand; and (5) created false records of actions and stockholdings of SmartBand.

In the course of ruling on the pending motions, it has been found as a matter of law that the Defendants invalidly issued shares of stock in the company to themselves; failed to create a written instrument as evidence of the issuance of additional shares which supposedly removed the Plaintiff as majority shareholder of SmartBand; prepared corporate minutes of the August 17, 2005, meeting at which those shares were purportedly issued; created alleged stock certificates after the Plaintiff issued the Anderson Resolutions; failed to maintain a stock ledger to record who the shareholders of SmartBand were; backdated shares of stock; wrote e-mails which "reflect Defendants' attempt to conjure an official issuing date for the alleged issued shares of stock out of thin air;" acted as *de facto*

officers and directors with a fiduciary duty when they refused to relinquish control of the corporation but did not breach that fiduciary duty; and that the Plaintiff's conspiracy theories did not rebut the presumption that in so acting the Defendants acted in good faith.

"The determination as to whether an act is unfair or deceptive is a question of law for the court." **Dalton v. Camp, 353 N.C. 647, 656 (2001) (citing Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000)); Business Cabling, Inc. v. Yokeley, ___ N.C. App. ___, 643 S.E.2d 63 (2007).** It would thus appear that further pleadings as to this issue may be appropriate. As a result, the Court will provide the parties with an opportunity to address this issue.

## IV.  ORDER

**IT IS, THEREFORE, ORDERED** as follows:

1.     The Plaintiff's motion for summary judgment as to Count I of the complaint is hereby **GRANTED** and declaratory judgment is entered simultaneously herewith;

2.     The Plaintiff's motion for summary judgment as to Count II of the complaint is hereby **DENIED**;

3.   The Court summarily dismisses Count II for failure to state a claim upon which relief may be granted;

4.   The Plaintiff's motion for summary judgment as to Count IV of the complaint is hereby **DENIED**;

5.   The Court summarily dismisses Count IV for failure to state a claim upon which relief may be granted;

6.   The Plaintiff's motion for summary judgment as to the Defendant's counterclaim for breach of fiduciary duties is hereby **GRANTED** and the counterclaim is dismissed with prejudice;

7.   The motion to dismiss for lack of *in personam* jurisdiction of Third-Party Defendant Haleakala is hereby **DENIED**;

8.   The motion for summary judgment of Third-Party Defendant Haleakala to dismiss the third-party complaint is hereby **GRANTED** and the third-party complaint is hereby dismissed with prejudice;

9.   The motion to strike video deposition of Plaintiff and Third-Party Defendant Haleakala is hereby **DENIED**;

10.  The motion to set trial is hereby **DENIED**;

11.  On or before 15 days from entry of this Order, the parties shall respond by pleading no longer than ten double-spaced pages as to

whether the issue of Claim III should be considered by the Court as a matter of law.

Signed: August 24, 2007

Lacy H. Thornburg
United States District Judge